# EXHIBIT AB

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | Case No.  15 MISC 0417 |

**DECLARATION OF DR. MARKUS MEIER IN SUPPORT OF EX PARTE APPLICATION OF PORSCHE AUTOMOBIL HOLDING SE FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

DR. MARKUS MEIER declares the following under penalty of perjury pursuant to 28 U.S.C. § 1746:

1.      I am a partner with the law firm of Hengeler Mueller Partnerschaft von Rechtsanwälten mbB ("Hengeler Mueller") in Frankfurt am Main, Germany.  Hengeler Mueller is counsel for Porsche Automobil Holding SE ("PSE") in legal proceedings captioned *Effecten-Spiegel, et al.* v. *Porsche Automobil Holding SE*, Dkt. No. 18 O 175/15, currently pending in the German Regional Court of Hanover (the "German Action").  I am licensed to practice law in Germany.

2.      I make this declaration in support of PSE's Application for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings.  Except as otherwise indicated, all statements in this Declaration are based upon my personal knowledge and experience, or upon my review of records maintained by Hengeler Mueller in the regular course of its representation of PSE.

**The Relevant Parties**

*Porsche Automobil Holding SE*

3.      PSE, the defendant in the German Action, is a German holding company organized under the laws of the European Union and Germany.  PSE currently holds 52.2% of the voting rights in Volkswagen AG ("VW").  PSE's headquarters are located in Stuttgart-Zuffenhausen, Germany.  Dr. Wendelin Wiedeking ("Dr. Wiedeking") and Mr. Holger P. Härter ("Mr. Härter") are former members of the management board of PSE.  Dr. Wiedeking and Mr. Härter were the CEO and CFO, respectively, of PSE when the alleged events giving rise to the claims in the German Action took place in 2008.

4.      PSE was formed in June 2007, when the shareholders of Dr. Ing. h.c. F. Porsche AG, the manufacturer of Porsche automobiles, voted to change the company's corporate form and transfer the operating business to a wholly owned subsidiary, which thereafter was renamed Dr. Ing. h.c. F. Porsche AG.  During 2008 and most of 2009, PSE held 100% of the shares of Dr. Ing. h.c. F. Porsche AG.  Following a number of complex restructurings, the Porsche car manufacturing business has been run since August 2012 by a wholly-owned subsidiary of VW.  Since then, PSE has operated as an investment holding company, managing its investment in VW and other automotive-related investments.  For ease of reference, this Declaration will refer to both Porsche Automobil Holding SE and Dr. Ing. h.c. F. Porsche AG as "PSE."

*Plaintiffs in the German Action*

5.      Plaintiffs in the German action are 32 large investors, including hedge funds, pension funds, and other investment funds, as well as entities that provide services for investment funds ("German Plaintiffs").  German Plaintiffs are based in the United States,

Australia, Bermuda, Canada, the Cayman Islands, Germany, Ireland, Norway, and the United Kingdom.

**PSE's Investment in VW**

6.  In September 2005, PSE obtained a 10.26% holding in VW.  On September 25, 2005 PSE announced its intention to acquire 20 percent of VW ordinary shares ("VW Shares").  In the years that followed, PSE gradually increased its investment in VW. These steps were taken in response to various factors, including changes in general economic conditions, and due to a desire to solidify the company's pre-existing technology-driven business relationship with VW.  By March 28, 2007, PSE's stake in VW exceeded 30% of VW Shares.

7.  On March 3, 2008, PSE's supervisory board ratified the company's management board decision to raise PSE's stake in VW Shares to more than 50 percent.  PSE announced this information publicly on the same day in a press release.  PSE's announcement prompted speculation by the media that PSE intended to seek a stake in VW Shares as high as 75 percent.  On March 10, 2008, PSE issued a press release denying reports in the media that claimed that PSE intended to increase its stake in VW to 75%, noting that the probability of acquiring such a stake was very small, given that the German State of Lower Saxony owned 20% of the shares.  On March 14 and April 29, 2008, PSE made additional disclosures regarding its holdings in VW Shares.

8.  On July 23, 2008, PSE's supervisory board issued a resolution authorizing PSE's management board to increase PSE's holdings of VW Shares to more than 75 percent—a decision the management board had not yet made.  That same day, a PSE spokesperson refused to comment on alleged plans to acquire up to 80 percent of VW Shares and stated, "[T]oday we are talking about the majority."

9.      On September 16, 2008, Porsche SE announced in a press release that its stake in VW Shares had risen to 35.14%.  In the press release, Dr. Wiedeking was quoted as stating that PSE's aim remained to increase its shareholding to over 50% of VW Shares, as communicated in early March 2008.  Two days later, on September 18, 2008, a press article quoted a statement allegedly made by an unnamed spokesperson of PSE, confirming that a domination agreement between PSE and VW, which was being discussed by the media, remained merely theoretical.

10.     On October 2 and 7, 2008, PSE acquired additional VW Shares, increasing its holdings of VW Shares to 42.6 percent.

11.     From March through October 2008, PSE never ruled out the possibility of eventually seeking a 75% stake in VW Shares.  For example, during interviews on October 2 and 5, 2008, Dr. Wiedeking explicitly maintained the possibility that PSE could eventually seek a 75% stake in VW Shares.

12.     On October 26, 2008, PSE disclosed publicly in a press release that it owned 42.6% of VW Shares and held cash-settled options referencing 31.5% of VW Shares, and that the aim now was to increase the stake in VW Shares to 75% in 2009 in order to pave the way for a domination agreement, provided that economic conditions were suitable for doing so.

13.     On October 27 and 28, 2008, the price of VW Shares increased from approximately €210 per share on October 24, 2008, to above €1000 on October 28, 2008.  In the following weeks/months, the share price for VW Shares returned to its previous level of about €210, where it remained well into 2009.

14.     Throughout 2008 and 2009, the press and financial analysts covered and discussed extensively PSE's actions with respect to VW Shares in articles in the United States, Germany, and elsewhere.

**Court Proceedings, Regulatory Investigations, and Criminal Actions Involving PSE**

15.     Following its October 26, 2008 press release, several civil suits and other proceedings were initiated against PSE in the United States and Germany by hedge funds and other investors, which alleged that PSE made misstatements and engaged in market manipulation in connection with its investment in VW Shares and related derivatives in 2008.  Although currently suspended, litigation against PSE in connection with its investment in VW Shares is also pending in the United Kingdom.

16.     Starting in 2008, various German criminal and regulatory authorities commenced highly publicized investigations concerning allegations that PSE manipulated the market in VW Shares, resulting in formal criminal charges against PSE's former CEO and CFO in late 2012 and criminal investigations against members of PSE's supervisory board in 2014.[1]

17.     In January 2010, a group of international hedge funds brought several actions against PSE in the United States District Court for the Southern District of New York, alleging that PSE had made fraudulent statements and engaged in market manipulation in connection with its investment in VW.  The district court dismissed those lawsuits in late 2010, and the result was affirmed on appeal in 2014.  Related lawsuits filed in New York State Court in 2011 also were dismissed.

18.     From 2011 to 2013, numerous investors launched a series of lawsuits and other proceedings against PSE in various German courts based on similar allegations that PSE

---

[1]     The criminal investigations against members of PSE's supervisory board were discontinued in 2015.

issued false or misleading press releases in 2008 about its investment in VW and engaged in market manipulation in connection with VW Shares or related derivatives, resulting in harm to other VW investors.  Some of these cases have been dismissed, while others remain pending in various stages.

19.     All of these court proceedings and investigations were closely followed and covered by domestic and international media, which published many articles regarding these proceedings during 2010 and 2011.  The news coverage was comprehensive, and stories were published throughout Germany, the United Kingdom, the United States and elsewhere, as well as on the Internet.

**The German Action**

### *Claims and Defenses*

20.     On March 2, 2015, German Plaintiffs initiated the German Action by filing a statement of claims in the German Regional Court of Braunschweig (docket no. 5 O 434/15).  The case was subsequently referred by the court to the Regional Court of Hanover (docket no. 18 O 175/15).

21.     German Plaintiffs also applied for proceedings under the German Act on Model Case Proceedings in Disputes Regarding Capital Market Information (the "Model Case Act"), which establishes a procedure for adjudication in a Higher Regional Court of legal and factual questions common to numerous securities actions.  The outcome of those proceedings has a binding effect on all related cases involving similar claims.  German Plaintiffs' application under the Model Case Act currently remains pending.

22.     In the German Action, German Plaintiffs seek to assert, *inter alia*, tort claims under Sections 823 and 826 of the German Civil Code, claiming over €700 million in damages based on allegations essentially identical to those raised in numerous prior suits

-6-

concerning PSE's investment in VW Shares.  Like the hedge funds in the dismissed U.S. actions, German Plaintiffs claim that PSE issued false and misleading press releases, manipulated the market for VW Shares, and engaged in an allegedly risky options strategy in an attempt to take over VW.

23.     As in the prior U.S. actions, German Plaintiffs claim that, during or before March 2008, PSE formed a secret plan to acquire at least 75% of VW Shares.  German Plaintiffs claim that, to achieve this goal, PSE falsely denied in a March 10, 2008 press release (and in subsequent communications preceding PSE's October 26, 2008 press release) that it intended to seek a 75% stake while secretly pursuing an allegedly risky options strategy that would allow it to finance the acquisition of the necessary VW Shares.

24.     In addition, as in prior German court proceedings commenced as early as September and December 2011, German Plaintiffs contend that PSE's October 26, 2008 press release was false and misleading because, by that time, PSE's allegedly precarious options strategy was allegedly failing, rendering PSE legally and financially unable to acquire a 75% stake in VW Shares.  German Plaintiffs claim that PSE's October 26, 2008 press release saved PSE's options strategy from catastrophic failure by causing the price of VW Shares to skyrocket, inflicting large losses on VW investors (like German Plaintiffs).

25.     On July 31, 2015, PSE filed its statement of defense.  Among other things, PSE asserted that German Plaintiffs' claims against PSE are barred under the applicable three-year statute of limitations.  PSE asserted that, given that the prior U.S. and German proceedings were so highly publicized, German Plaintiffs were aware, or at least, should have been aware of the basis for their claims against PSE by December 31, 2011 at the latest, requiring German Plaintiffs to bring suit by December 31, 2014—a deadline they missed.  In support of this

contention, PSE submitted to the Regional Court of Hanover a comprehensive set of publicly available German and international news articles from 2008 to 2011 addressing, *inter alia*, PSE's investment in VW, governmental investigations into allegations that former members of PSE's management board manipulated the market in VW Shares, and lawsuits filed by other investors against PSE in the United States and Germany based on PSE's 2008 statements.

26.    On November 24, 2015, German Plaintiffs filed their reply.

27.    On December 8, 2015, the Regional Court of Hanover held a hearing, at which it expressed its view that PSE may not be able to establish a statute-of-limitations defense based solely on the public availability of news articles concerning the allegations and lawsuits against PSE.  Rather, the court indicated that PSE would have to demonstrate which specific articles (or other documents) came to German Plaintiffs' attention and alerted them to their potential claims.

28.    The Regional Court of Hanover is expected to make a preliminary ruling on PSE's statute-of-limitations defense in April 2016.  PSE's submission to the court is due in March 2016, and therefore, there is a pressing need for § 1782 discovery in advance of this deadline.

### German Law on the Statute of Limitations Defense

29.    German Plaintiffs' claims are subject to a statute-of-limitations defense under German Law.  Section 195 of the German Civil Code provides a general applicable limitations period of three years.  Under Section 199, the limitations period begins to run after two conditions are satisfied:  (1) plaintiff's claims actually arise, and (2) plaintiff knows, or should know, the circumstances giving rise to the claims.  The three-year limitations period is triggered from the later of (1) and (2), and plaintiffs must commence suit before the end of the third calendar year.  A plaintiff obtains knowledge for purposes of Section 199 when the facts

known or perceptible to him are sufficient to reasonably infer the culpable misconduct of the defendant.

30.     Thus, if German Plaintiffs knew or should have known of the circumstances giving rise to their alleged claims by December 31, 2011, they needed to file their claims by December 31, 2014—which they failed to do, as the German Action was not filed until March 2, 2015.

*PSE's Need for Additional Discovery*

31.     Under German law, the burden of proof regarding German Plaintiffs' knowledge lies with PSE.  PSE has submitted in the German Action a comprehensive set of German and international media articles from 2008 to 2011 regarding PSE's public statements about VW Shares and the subsequent investigations and court proceedings, in order to prove that the German Plaintiffs knew or should have known, on or before December 31, 2011, of the circumstances giving rise to their alleged claims.   The submitted media articles include information about, *inter alia*, the following:

- investigations by the public prosecutor's office in Stuttgart based on allegations of market manipulation by the former members of PSE's management board;

- an alleged decision by PSE in February 2008 (reported by media outlets in 2009) to acquire at least 75% of VW Shares;

- the alleged liquidity problems of PSE before its October 26, 2008 announcement and the share price development of VW Shares in the week before; and

- lawsuits filed by other investors and hedge funds against PSE in the United States and Germany based on the same or similar allegations asserted by German Plaintiffs in the German Action.

32.     PSE believes that the publicly-available evidence it has submitted is sufficient to prove that German Plaintiffs knew or should have known the circumstances giving rise to the alleged claims in 2008 or 2009, or at the very latest, in 2011.  However, based on prior statements of the Regional Court of Hanover at the December 8, 2015 hearing, PSE likely will need to establish that specific articles or other documents or information came to German Plaintiffs' attention and alerted them to their potential claims on or before December 31, 2011.

33.     I expect that the entities responsible for managing certain German Plaintiffs have collected copies of potentially relevant documents in their possession, custody, or control.  Unlike discovery in the United States, German law requires PSE to specify each individual document that it seeks in a way that enables the respective plaintiff to identify the individual document without further effort, *e.g.*, by providing the title, content and date of the document.  Because PSE does not have such detailed information about any of these documents, PSE is unable to obtain any potentially relevant documents in Germany.  Similarly, German law does not provide for the taking of depositions.  Obtaining discovery from German Plaintiffs' decision makers pursuant to § 1782 is thus critical to PSE's ability to establish its statute-of-limitations defense in the German Action.

34.     PSE now seeks discovery under § 1782 to obtain documents and deposition testimony critical to its statute-of-limitations defense in the German Action.  Specifically, PSE seeks permission to serve each Respondent with narrowly tailored subpoenas for production of documents and Rule 30(b)(6) deposition testimony regarding, *inter alia*, Respondent's (and the corresponding German Plaintiff's) awareness of PSE's actual or contemplated investment in VW Shares or related securities, and claims, lawsuits, or investigations arising from such investment brought against PSE and its officers and supervisory

board members.  PSE also seeks limited information regarding Respondents' corporate structure to further clarify the corporate relationships among the various German Plaintiffs.  Such discovery will be critical to demonstrating definitively that certain German Plaintiffs were aware (through their managers) of the basis for their current claims prior to December 31, 2011, and that such claims are therefore barred under the applicable three-year statute of limitations.

35.    PSE's § 1782 application is made in good faith and is not intended to circumvent any German proof-gathering restrictions or policies.

*German Courts Welcome Information Obtained Pursuant to 28 U.S.C. § 1782*

36.    German courts typically welcome evidence obtained pursuant to 28 U.S.C § 1782.  German courts are generally obligated, by the German constitution, to base their rulings on all evidence submitted by the parties during the proceedings, so long as that evidence has not been improperly obtained.  Consequently, German courts generally have a positive view of evidence lawfully obtained in the United States pursuant to § 1782.  Evaluation of the evidence presented remains at the court's discretion pursuant to Section 286 of the German Code of Civil Procedure.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 22, 2015.

_____
Dr. Markus Meier

-11-