SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
Viking Global Equities LP, Viking Global Equities II LP, and VGE : 
III Portfolio Ltd., :
Plaintiffs, : Index No. 650435/2011
       v. :
  :
Porsche Automobil Holding SE, f/k/a Dr. Ing. h.c. F. Porsche AG, :
Defendant. :
  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
Glenhill Capital LP; Glenhill Capital Overseas Master Fund LP; :
Glenhill Concentrated Fund LP; Glenview Capital Partners, L.P.; :
Glenview Institutional Partners, L.P.; Glenview Capital Master :
Fund, Ltd.; GCM Little Arbor Partners, L.P.; GCM Little Arbor : Index No. 650678/2011
Institutional Partners, L.P.; GCM Little Arbor Master Fund, Ltd.; : Honorable Charles E. Ramos
GCM Opportunity Fund, L.P.; Glenview Capital Opportunity Fund, : Commercial Division
L.P.; Glenview Offshore Opportunity Master Fund, Ltd.; Greenlight : Part 53
Capital, L.P.; Greenlight Capital Qualified, L.P.; Greenlight Capital :
Offshore Partners; Greenlight Reinsurance, Ltd.; Royal Capital :
Value Fund, LP; Royal Capital Value Fund (QP), LP; RoyalCap :
Value Fund, Ltd.; RoyalCap Value Fund II, Ltd.; Tiger Global, :
L.P.; Tiger Global II, L.P.; Tiger Global, Ltd., :
Plaintiffs, :
       v. :
  :
Porsche Automobil Holding SE, f/k/a Dr. Ing. h.c. F. Porsche AG, :
Defendant. :
  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF GERHARD WAGNER IN SUPPORT OF PORSCHE AUTOMOBIL HOLDING SE'S MOTION TO DISMISS**

**DECLARATION OF GERHARD WAGNER**

Gerhard Wagner hereby declares as follows:

## I.   PERSONAL QUALIFICATIONS

1.   My name is Gerhard Wagner.  I received my legal education in Germany and in the United States.  I earned a PhD in law (Dr. jur.) from the University of Göttingen, Germany.  I finished my legal studies at the University of Chicago Law School with an LL.M. degree in 1995.  Since 1999, I have been a tenured professor in German and European Private Law and Civil Procedure, Conflict of Laws, and Comparative Law at the Law and Economics faculty of the University of Bonn.  I also presently serve as managing director of the Institute of German and International Civil Procedure and Conflicts Management and as co-director of the Center for Advanced Studies in Law and Economics (CASTLE).  In addition, I hold the position of Professor of Fundamentals of Private Law at Erasmus University, Rotterdam, The Netherlands.  In the academic year 2010/2011, I have served as a visiting professor at the University of Chicago Law School.  My research is concentrated within the two fields of tort law and dispute resolution, including international litigation.  I am the co-author of a popular treatise on the German law of torts, and the sole author of the leading commentary on the tort law provisions of the German Civil Code.  I am co-editor of the two leading German-language journals on German and European private law, i.e., the Archiv für die civilistische Praxis (AcP) and the Zeitschrift für Europäisches Privatrecht (ZEuP).  One of my very recent works is a comprehensive commentary of the Brussels-I Regulation, which will be published in 2011 as part of the leading work on the German Code of Civil Procedure (Stein & Jonas, Zivilprozessordnung, Vol. XI).  I attach my resumé and a list of publications as Exhibit A.

2.   I have been engaged as an expert witness by Sullivan & Cromwell LLP on behalf of Porsche SE ("Porsche").  I have reviewed the complaints filed by Plaintiffs in *Glenhill Capital et al. v. Porsche* and *Viking Global Equities et al. v. Porsche* (the "Complaints").  The opinions expressed in this declaration are entirely my own.  I arrived at my conclusions on the basis of documents provided by Porsche, publicly available information, and rules and principles of the applicable German law.

3.  I am being compensated for my efforts at an hourly rate of EUR 450. The payment of my fees is not contingent upon either the conclusions that I draw in this declaration or the outcome of the present litigation.

## II.  SUMMARY OF CONCLUSIONS

4.  Assuming the truth of the facts alleged in the Complaints, Porsche is subject to lawsuits in Germany. The substantive law of Germany governing liability for misinforming capital markets would provide Plaintiffs with a cause of action. Plaintiffs also would be entitled to compensation for all losses incurred, provided that liability can be established.

5.  Germany's civil practice shares the same central values and goals as U.S. practice, i.e., the enforcement of valid claims by means of granting open access to courts and by establishing the true facts underlying the dispute in question. While the German system of fact-gathering differs from the American system of pre-trial discovery, the German system nonetheless would provide Plaintiffs with a full and fair opportunity to develop their case.

6.  Germany has a strong interest in having the claims that form the subject matter of the present lawsuits adjudicated in Germany. The rules on liability for misinformation of capital markets are part of the regulatory framework of the German capital markets. The German government strongly favors the application of German law to questions concerning the potential liability of German corporations. The same policy applies with regard to the procedural questions of international jurisdiction and venue.

7.  As evidence of such strong interest, German law provides that with regard to lawsuits brought against German corporations for damages caused by misinformation of capital markets, exclusive jurisdiction is vested in the court at the seat of the issuer of the relevant securities. Regardless of whether Porsche or Volkswagen AG ("VW") qualifies as the relevant issuer, a German court would have exclusive jurisdiction because the seats of both Porsche and VW are located in Germany. Thus, a judgment rendered by a New York court against Porsche would not be enforceable in Germany.

### III.   DISCUSSION

#### A.   The Defendant is Subject to Lawsuits in Germany

8. The German courts are competent to hear and decide the claims raised by the Plaintiffs. If the Plaintiffs were to file a lawsuit in Germany raising similar claims, Porsche would be subject to service of process there.

9. Pursuant to the regulations of the European Union ("EU")[1] and the case law of the European Court of Justice ("ECJ"),[2] any defendant that is domiciled within the EU is subject to the jurisdiction of the courts at the place of his, her, or its domicile.

10. Porsche is organized as a European Stock Company ("Societas Europaea" – SE). EU regulations provide that the domicile of corporate entities such as an SE is in "the place where it has its: (a) statutory seat, or (b) central administration, or (c) principal place of business."[3] The statutory seat of Porsche is Stuttgart, Germany, and this is also where its central administration and principal place of business are located.[4] Therefore, Porsche is subject to the jurisdiction of the German courts.

11. The applicable EU regulation leaves the issue of venue within a particular Member State to the law of the Member State in question. Accordingly, venue in this case is governed by German law.

12. The conclusion that Porsche is subject to service of process in Germany is corroborated by the fact that a civil suit against Porsche has been brought in the Landgericht Stuttgart (Stuttgart District Court), which is based on similar facts and related legal allegations as is the case here.[5] The Stuttgart court held that venue is proper at the seat of VW, i.e. in Wolfsburg, and transferred the case to the competent court in Braunschweig, in whose district Wolfsburg is located.

---

[1] Art. 2 of the European Regulation on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters ("Brussels I Regulation" or "Brussels I").

[2] In its seminal decision in the *Group Josi* case, the ECJ held that the Brussels I regime: "is in principle applicable where the defendant has its domicile or seat in a Contracting State, even if the plaintiff is domiciled in a non-member country." EuGH, 13.7.2000, C-412/98 (*Group Josi Reinsurance Company SA ./. Universal General Insurance Company*), [2000] ECR, I-5925, at 5963 para 61.

[3] Art. 60 Brussels I Regulation.

[4] Cf. http://www.porsche-se.com/pho/de/porschese.

[5] Landgericht Stuttgart, 3.5.2011, No. 12 O 3/11.

**B.     Availability and Adequacy of German Remedies**

13.     German law provides Plaintiffs with: (1) a cause of action to bring claims similar to those raised in the Complaints, and (2) a system of damages that would entitle them to full compensation for their financial losses, assuming that the facts and the evidence support their claims.  Moreover, (3) German courts would not enforce a judgment entered against Porsche by a New York court.

**1.     Adequacy of the Substantive Law**
  **(a)     Liability**

14.     It is undisputed that the German law of delict, which is more or less equivalent to the common law concept of "tort," may provide a cause of action for capital markets fraud.

15.     Where intentional wrongdoing is at issue, the tortfeasor may be liable under Section 826 of the German Civil Code (Bürgerliches Gesetzbuch – "BGB").  Pursuant to this provision, someone who causes harm to another intentionally and "against good morals" is liable for damages, including purely financial harm.[6]  The German Federal Supreme Court (Bundesgerichtshof – "BGH") has held repeatedly that capital markets fraud actions may be brought under Section 826 BGB.[7]  Pursuant to this jurisprudence, intentionally misinforming investors for one's own benefit qualifies as behaviour violating the standards of good morals and fair dealing.[8]

16.     The availability of a cause of action against Porsche in Germany is demonstrated by the fact that, as discussed above, a private investor has brought a lawsuit in Germany.[9]  Moreover, 40 investment funds have initiated conciliatory proceedings against Porsche in

---

[6]  Section 826 BGB provides: "A person who, against good morals, intentionally inflicts damage on another is liable to that other in damages." ("*Wer in einer gegen die guten Sitten verstoßenden Weise einem anderen vorsätzlich Schaden zufügt, ist dem anderen zum Ersatz des Schadens verpflichtet.*")

[7]  BGH, 19.07.2004, II ZR 218/03, BGHZ 160, 134 = NJW 2004, 2664; BGH, 19.07.2001, II ZR 402/02, BGHZ 160, 149 = NJW 2004, 2971; BGH, 19.07.2004, II ZR 217/03, NJW 2004, 2668; BGH, 09.05.2005, II ZR 287/02, NJW 2005, 2450; BGH, 28.11.2005, II ZR 80/04, ZIP 2007, 681; BGH, 28.11.2005, II ZR 246/04, ZIP 2007, 679; BGH, 26.06.2006, II ZR 153/05, ZIP 2007, 326; BGH, 04.06.2007, II ZR 147/05, ZIP 2007, 1560; BGH, 07.01.2008, II ZR 229/05, BGH, 04.06.2007, II ZR 173/05, ZIP 2007, 1564; ZIP 2008, 407; BGH, 07.01.2008, II ZR 68/06, ZIP 2008, 410; BGH, 03.03.2008, II ZR 310/06, ZIP 2008, 829; for a comprehensive treatment cf. *Wagner*, in: Münchener Kommentar zum BGB, 5th ed. 2009, § 826 para 73.

[8]  BGH, 19.07.2004, II ZR 402/02, BGHZ 160, 149, 157 = NJW 2004, 2971, 2973 seq.; concurring *Edelmann*, BB 2004, 2031, 2032 f.; *Möllers*, JZ 2005, 75, 76; *Spindler*, WM 2004, 2089, 2091 f.

[9]  *Supra*, para 12.

Germany.[10] The claimants in both proceedings have alleged facts similar to those alleged in the Complaints, and raised various breaches of capital markets law, including violations of Section 826 BGB.

### (b) Damages

17. If Plaintiffs succeeded in establishing Porsche's liability and their own financial losses as a result of the alleged wrongdoing, they would be entitled to full compensation, i.e. recovery of their total financial losses under German law. While it is true that the German law of damages restricts the recoverability of non-pecuniary losses (pain and suffering damages, cf. Section 253 BGB) and does not allow for punitive damages, there are no restrictions with regard to financial losses which are at issue here.

## 2. Adequacy of the Procedural Framework

### (a) Differences and Commonalities of U.S. and German Civil Procedure

18. American and German civil procedure share common values and pursue common goals. They are both designed to ensure the enforcement of valid claims and the denial of those claims that turn out to be unfounded.[11] In doing so, German civil practice observes basic norms of procedural fairness such as the right to present one's case and the right to be heard.[12] The major differences between American and German civil procedure are the absence of jury trials from German civil practice and the involvement of a single judge or a judicial panel in every aspect of the case. In Germany, the judge combines the functions of case manager, fact-finder and decision-maker in one person. Because the judge is in control of the fact-finding process, pre-trial discovery is not necessary for a lawsuit to develop. During oral hearings, the judge is the master of the case and the person who questions witnesses, orders the production of documents, commissions experts, etc. Of course, counsel are also entitled to present documents and other means of evidence and to examine witnesses and experts, and they also retain the right

---

[10] Under German law, potential plaintiffs are permitted to initiate conciliatory proceedings prior to filing a lawsuit in an attempt to settle the dispute.

[11] Cf. *Vollkommer*, in: Zöller, Zivilprozessordnung, 28th ed. 2010, Einl. para 39.

[12] Federal Constitutional Court (Bundesverfassungsgericht – "BverfG"), 21.2.2001, 2 BvR 140/00, NJW 2001, 2531: "Insbesondere müssen die Beteiligten einer bürgerlichen Rechtsstreitigkeit die Möglichkeit haben sich im Prozess mit tatsächlichen und rechtlichen Argumenten zu behaupten."

to petition the court to gather further evidence. The court must allow such petitions, save for cases of outright abuse.[13]

### (b) Pleading Standards

19. German civil practice follows the principle of fact pleading rather than notice pleading.[14] It is upon the parties to plead the facts that are relevant for the resolution of the dispute. However, it is accepted that the threshold must not be set too high with regard to cases where the relevant information is distributed asymmetrically between the parties. In many cases, the plaintiff is in a poor position to specify his pleadings because the relevant information is within the control of the defendant. In such situations, the courts have intervened to avoid the frustration of valid claims by applying the general rule of "sekundäre Behauptungslast" (reversal of the burden of pleading) to the benefit of the lesser informed party.[15] Where a party is unable in good faith to access the relevant information, it may plead its case with less specificity.

### (c) Witnesses

20. German courts may order witnesses domiciled in Germany to appear in court.[16] They also have the authority to compel witnesses to testify. With respect to witnesses who are domiciled outside of Germany but within the EU, German courts can also compel testimony through a system of judicial cooperation as between EU Member States.[17] During the oral hearing, the witness must testify truthfully and comprehensively.[18] In the absence of privilege,[19]

---

[13] BVerfG, 31.10.1990, 2 BvR 183/90, NJW 1991, 285, 286; BGH, 29.1.1992, VIII ZR 202/90, NJW 1992, 1768, 1769.

[14] *Rosenberg, Schwab & Gottwald*, Zivilprozessrecht, 17th ed. 2010, § 95 para 18 ff.

[15] BGH, 19.12.1953, II ZR 27/53, BGHZ 12, 49, 50; BGH, 01.12.1982, VIII ZR 279/81, BGHZ 86, 23, 29; BGH, 17.03.1987, VI ZR 282/85, BGHZ 100, 190, 195; BGH, 07.12.1998, II ZR 266/97, NJW 1999, 579, 580; BGH, 19.04.1999 II ZR 331/97, NJW-RR 1999, 1152.

[16] Section 377 (2) (No. 3) Code of Civil Procedure (Zivilprozessordnung – "ZPO"). For an exposition of witness examination in German civil practice cf. *Rosenberg, Schwab & Gottwald* (*supra*, note 14), § 120.

[17] Council Regulation (EC) No 1206/2001 of 28.5.2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters, OJ L 174 of 27.6.2001, p. 1 ff.

[18] Cf. Section 395 ZPO.

[19] There are exceptions to the duty to testify but these are narrowly defined. For example, priests, journalists and doctors need not disclose information learned in the course of their professional dealings (Section 383 No. 4 – 6 ZPO), and spouses and relatives of the parties may not be compelled to testify (Section 383 No. 1 – 3 ZPO). The law also grants privileges with respect to particular questions only, i.e. those that would subject the witness to criminal prosecution or to civil liability or involve the disclosure of a commercial secret (Section 384 ZPO).

a witness who refuses to testify is subject to sanctions, including a fine or imprisonment.[20] Perjury and other categories of failure to tell the truth are prosecuted as public crimes.[21]

### (d) Document Production

21. With regard to documents, the German courts are vested with increasingly broad powers.[22] Section 142 Code of Civil Procedure (Zivilprozessordnung – "ZPO") authorizes the court to compel both the parties to the lawsuit and third parties to produce documents that a party has directly referred to in its pleadings in support of its factual allegations. Orders for document production directed against a party to the litigation cannot be enforced by injunction but, absent a valid ground for excuse, the court will draw adverse inferences from a refusal to comply with its order.[23] In addition, there is a growing body of statutory rules within the substantive law granting one party disclosure rights against its better informed counterpart.[24]

22. With regard to documents under the control of a government authority, the powers of a German court are even broader. The German Constitution requires public courts as well as other government authorities to provide mutual assistance to each other.[25] The civil court may turn directly to a sister court or government authority and request the submission of documents and the disclosure of other relevant information, provided that such documents and information are relevant to the facts specifically pled by a party.[26] The prosecutor's office in Stuttgart (Staatsanwaltschaft Stuttgart) is currently investigating charges of market manipulation against former Porsche officers Wendelin Wiedeking and Holger Härter, including allegations similar to those alleged in the Complaints. Consequently, a civil court based in Germany would be authorized to request, directly from the prosecutor's office, the production of the file that is

---

[20] Section 390 ZPO. The court may order that the witness bear the costs of the wasted hearing, together with the payment of a fine for non-compliance. As a matter of last resort, the recalcitrant witness may even be taken into custody for up to six months. Cf. Sections, 380 (1), 390 (1), 913 ZPO.

[21] Sections 153 ff. German Penal Code (Strafgesetzbuch – "StGB").

[22] *Greger*, in: Zöller (*supra*, note 11), § 142 para 6 ff.; *Wagner*, JZ 2007, 706; *idem*, Festschrift für Dieter Leipold, 2009, p. 801 ff.

[23] Where the order is directed at third parties, the same privileges that limit the duty of witnesses to provide oral testimony and the same sanctions for groundless refusal apply. *Supra*, para 20.

[24] Cf. *Rosenberg, Schwab & Gottwald* (*supra*, note 14), § 119 para 33 ff.

[25] Art. 35 (1) German Constitution (Grundgesetz – "GG") reads: "All federal or state government authorities shall provide legal and administrative assistance to each other." ("*Alle Behörden des Bundes und der Länder leisten sich gegenseitig Amtshilfe.*"). Cf. also *Leipold*, in: Stein/Jonas, Zivilprozessordnung, 22nd ed. 2006, § 432 para 13 ff.

[26] Section 273 (2) (No. 2), Section 358a (No. 2) ZPO; *Rosenberg, Schwab, & Gottwald* (*supra*, note 14), § 122 para 4 ff.

compiled in the course of the investigation.[27]  In doing so, the civil court may seek to take advantage of the information gathered with the help of search warrants and the exercise of the police powers vested in the public prosecutor.  In addition, the competent court in Germany may request the presentation of the file that was prepared by the German Federal Financial Services Authority (Bundesanstalt für Finanzdienstleistungsaufsicht – "BaFin") in the course of its own investigation of Porsche's attempt to take over VW, provided that the court determines that such information is relevant to the facts specifically pled by a party.[28]

23.     If these cases were litigated in New York, discovery could be potentially impeded because Porsche is bound by the restrictions imposed by the German Federal Data Protection Act (Bundesdatenschutzgesetz – "BDSG").[29]  This statute sets up strict requirements for the collection, recording, processing, use and transmission of employee data.  The interest of a person in the confidentiality of his or her data is constitutionally protected as the right to informational privacy under Art. 2 of the German Constitution (Grundgesetz – "GG").[30]  Under German law, certain information contained in emails, including the names of the sender and the recipient, may be classified as personal data within the scope of this constitutional guarantee.[31]

24.     Under Section 4b BDSG, which refers to Art. 25, 26 of the EC Data Protection Directive,[32] the transmission of personal employee data to a recipient outside the EU is not permitted unless the level of data protection that the recipient has to observe is deemed adequate.  According to the EU Commission, the laws of the United States do not ensure an adequate level of data protection.  Although  Section 4c(1)(No. 4) of the Data Protection Act carves out an

---

[27]   Sections 474 (1), 478 (1) Code of Penal Procedure (Strafprozessordnung – "StPO").

[28]   Section 9 German Takeover Act (Wertpapierübernahmegesetz – "WpÜG"); Sections 4 and 5 Administrative Procedure Act (Verwaltungsverfahrensgesetz – "VwVfG").

[29]   The English version is available from the homepage of the Federal Commissioner for Data Protection and Freedom of Information at http://www.bfdi.bund.de/EN/DataProtectionActs/Artikel/BDSG_idFv01092009.pdf?__blob=publicationFile.

[30]   BVerfG, 1 BvR 209/83, Dec. 15th 1983, BVerfGE 65, 1.

[31]   *Gabel*, in: Taeger/Gabel*,* Bundesdatenschutzgesetz, 2010, § 4c para 11; *Däubler*, in: Däubler/Klebe/Wedde/Weichert, Bundesdatenschutzgesetz, 3rd ed. 2010, § 4c para 8; Michael Rath & Saskia Klug, e-Discovery in Germany?, Kommunikation und Recht (K&R) 2008, 596, at 598; Axel Spies & Christian Schroeder, Auswirkungen der elektronischen Beweiserhebung (eDiscovery) in den USA auf deutsche Unternehmen, MultiMediaRecht (MMR) 2008, 275, at 280; Abbo Junker, Electronic Discovery gegen deutsche Unternehmen, Frankfurt am Main 2008, para 180.

[32]   Directive 95/46/EC of the European Parliament and of the Council of 24.10.1995 on the protection of individuals with regard to the processing of personal data and on the free movement of such data, OJ L 281, at 31–50.

exception for the transmission of employee data outside the EU for the purpose of enforcing or defending rights in connection with court proceedings, such transmission may be subject to certain restrictions.[33] Moreover, commentators are of the view that, under Section 4c(1)(No. 4), the confidentiality interests of employees take priority over the interests of a party to a dispute pending in a U.S. court.[34] Thus, because Porsche is subject to EU and German data protection laws, discovery in a New York action would be a complex and burdensome process.

### 3. No Recognition and Enforcement of a New York Judgment in Germany
#### (a) The Mirror-Image Rule

25. If a New York court were to render a judgment against Porsche, such judgment would not be recognized and enforced in Germany because German law grants German courts exclusive jurisdiction over these cases.

26. Where the recognition and enforcement of a judgment rendered by a court outside the EU is at issue, Section 328 (1) (No. 1) ZPO applies and requires a jurisdictional "mirror-image" test: recognition of a non-German judgment turns on whether the court that rendered the judgment would have had jurisdiction under the applicable German rules.[35] In the cases at hand, a German judge charged with the decision to declare enforceable a judgment of a New York court would have to assume that the ZPO applied in New York and then ask whether the court located there had jurisdiction. As will be shown below, the answer would have to be: "no."

#### (b) Section 32b ZPO

27. Damages claims for losses suffered on the capital markets are governed by Section 32b ZPO, which vests jurisdiction exclusively in the courts at the seat of the relevant party.[36] Section 32b (1) ZPO provides in relevant part:

---

[33] In order to facilitate the transfer of data between Europe and the U.S., the EU Commission has entered into a so-called "safe harbor agreement" with the U.S. Department of Commerce; cf. Commission Decision 2000/520/EC of 26.07.2000 pursuant to Directive 95/46/EC of the European Parliament and of the Council on the adequacy of the protection provided by the safe harbour privacy principles and related frequently asked questions issued by the U.S. Department of Commerce (notified under document number C(2000) 2441), OJ L 215, at 7–47.

[34] Abbo Junker (*supra*, note 31), para 195; Axel Spies & Christian Schroeder (*supra*, note 31), MMR 2008, 275, at 280/1; Michael Rath & Saskia Klug (*supra*, note 31), K&R 2008, 596, at 598.

[35] "*Wenn die Gerichte des Staates, dem das ausländische Gericht angehört, nach den deutschen Gesetzen nicht zuständig sind.*"

[36] Section 32b ZPO was introduced together with the "Act on the Initiation of Model Case Proceedings in Respect of Investors in the Capital Markets" (Kapitalanleger-Musterverfahrensgesetz – "KapMuG").

> In suits for (1) compensation of losses incurred as a consequence of false, misleading or undisclosed public capital market information . . . exclusive jurisdiction is vested in the court at the seat of the issuer concerned . . . . This provision does not apply if the seat is outside of Germany.[37]

28. Here, because Porsche is being sued for compensation for losses allegedly caused by misinformation of investors and failure to disclose relevant information to the capital markets, the courts at the seat of the relevant issuer have exclusive jurisdiction while all other courts are divested of jurisdiction they would otherwise have.[38] Regardless of whether Porsche or VW qualifies as the relevant issuer within the meaning of Section 32b ZPO, the competent court is a German one, as the seats of both Porsche (Stuttgart) and VW (Wolfsburg) are located in Germany.[39]

29. In conclusion, Section 32b ZPO vests exclusive jurisdiction in the German courts.

### (c) Section 32b ZPO Includes International Jurisdiction

30. Some legal commentators have argued that Section 32b ZPO is limited to designating venue and does not extend to international jurisdiction.[40] However, this argument is not persuasive, and the dominant opinion holds otherwise.[41] The general principle is that the rules of the ZPO on jurisdiction serve a double function in the sense that they not only designate

---

[37] *"Für Klagen, mit denen 1. der Ersatz eines auf Grund falscher, irreführender oder unterlassener öffentlicher Kapitalmarktinformationen verursachten Schadens [...] geltend gemacht wird, ist das Gericht ausschließlich am Sitz des betroffenen Emittenten [...] zuständig. Dies gilt nicht, wenn sich dieser Sitz im Ausland befindet."*

[38] In light of the plain language of Section 32b ZPO, there is no doubt that it is not limited to model case proceedings under the KapMuG – which represents a kind of group litigation mechanism – but that it also covers individual claims brought by investors alleging fraudulent security transactions. Following statements in the legislative materials, the BGH has made it clear repeatedly that Section 32b ZPO covers any kind of damages claim that is based on an alleged manipulation of capital markets, including those brought under the general law of delict, notably Section 823 (2) BGB and Section 826 BGB (Bill of the KapMuG, BT-Drucks. 15/5091, p. 20, 33 f.; BGH, 30.1.2007, X AZR 381/06, NJW 2007, 1364, para 10; BGH, 7.2.2007, X ARZ 423/06, NJW 2007, 1365 para 11; *Vollkommer*, NJW 2007, 3094; *Hess*, in: Kölner Kommentar zum KapMuG, 2008, § 32b ZPO para 5). Accordingly, the District Court in Stuttgart applied Section 32b PO to a claim brought against Porsche and based on similar set of facts as the present action without much ado. Cf. Landgericht Stuttgart, 3.5.2011, No. 12 O 3/11, at 8.

[39] Cf. Landgericht (District Court) Stuttgart, 3.5.2011, 12 O 3/11, at 10-18, explaining that the competent court in a case like the present one is at the seat of the target company. Therefore, the Stuttgart court transferred the case to the Braunschweig District Court in whose district Wolfsburg, the seat of VW, is located.

[40] *Heinrich*, in: Musielak, Zivilprozessordnung, 8th ed. 2011, § 32b para 7; leaning towards this position *Vollkommer*, in: Zöller (*supra*, note 11), § 32b para 8.

[41] *Bachmann*, IPRax 2007, 77, 83 ff.; *Haß/Zerr*, RIW 2005, 721, 727; *von Hein*, RIW 2004, 602, 606 ff.; *Hess*, in: Kölner Kommentar § 32b para 21; *Reuschle*, WM 2004, 2334, 2343.

venue but also allocate international jurisdiction.[42] As the second sentence of Section 32b (1) ZPO ("This provision does not apply if defendant's seat is outside of Germany.") demonstrates, the framers were well aware of the problems of international jurisdiction. While Germany cannot determine jurisdiction with respect to non-German corporate defendants that are sued in a non-German court, the German lawmakers retain the power to accord German courts international jurisdiction over lawsuits brought against defendants domiciled in Germany. This is precisely what Section 32b ZPO was intended to do.[43]

## IV.  GOVERNMENTAL INTEREST

### A.  Germany's Strong Interest in Having its Substantive Law Applied

31. Germany has a strong governmental interest in having disputes involving securities of German corporations, which are traded on German stock exchanges, decided under German law. The statutory provisions introducing special liability for damages caused by the misinformation of capital markets were introduced in July 2002 as part of Germany's Fourth Financial Market Promotion Act (Viertes Finanzmarktförderungsgesetz).[44] The purpose of the Act is explained in the bill that formed the basis of deliberation in the German parliament: "It is the primary goal of this bill to strengthen the capital markets of Germany and to increase their competitiveness across Europe and the world."[45]

32. In their effort to strengthen the German financial markets, the lawmakers did not confine themselves to setting new regulatory standards, but also touched upon issues of liability. In this regard, the bill introducing the Act sets out:

> Confidence in the integrity and functioning of a financial market is an important factor affecting its quality for business and a prerequisite for favorable terms for companies to raise capital. This confidence must be strengthened.
>
> […] Against this background, the current bill aims at …

---

[42] BGH, 14.06.1965, GSZ 1/65, BGHZ 44, 46; BGH, 21.10.1992, XII ZR 182/90, BGHZ 119, 392, 393; 21.11.1996, IX ZR 148/95, BGHZ 134, 116, 117; BGH, 3.12.1992, IX ZR 229/91, BGHZ 120, 334, 337; *Geimer*, Internationales Zivilprozessrecht, 6th ed. 2009, para 946; *Roth*, in: Stein/Jonas, Zivilprozessordnung, Vol. 1, 22nd ed. 2003, vor § 12 para 32 ff.

[43] *Infra*, para 36 ff.

[44] For an overview cf. *Tielmann/Heppe*, 37 Int'l Law 191.

[45] BT-Drucks. 14/8017, p. 62: *"Der vorliegende Gesetzentwurf hat zum Ziel, den Finanzplatz Deutschland und seine Wettbewerbsfähigkeit in Europa und der Welt zu stärken."*

- Strengthening investor protection by increasing the transparency of securities markets and by creating the prerequisites for enforcing the prohibition of market manipulations and abuses of ad hoc disclosures.[46]

33. German lawmakers wanted to ensure better protection of investors, but also to generate incentives for public corporations to comply with their duties to timely and adequately inform market participants.[47] In this regard, the general rule on liability for pure economic loss, i.e., Section 826 BGB, shares the same functions as the special rules of the Securities Trading Act,[48] which explicitly preserves the right to rely on the general law of delict where intentional wrongdoing is at issue.[49]

34. In summary, Germany has a strong governmental interest in seeing its law applied to cases, like the one here, involving alleged misinformation of investors by a German corporation.

### B. Germany's Strong Interest in Having Claims Adjudicated by German Courts

35. Germany's governmental interest in the current matters is not limited to the substantive law. Rather, it also extends to the procedural law and to choice of forum. Section 32b ZPO was specifically designed to reserve for German courts exclusive jurisdiction over suits involving the behaviour of German corporations on the financial markets.[50] The purpose behind this legislation was to strengthen the German capital markets and to prevent forum shopping.[51] During the legislative process, the then-incumbent Secretary of Justice declared in public that the

---

[46] BT-Drucks. 14/8017, p. 62 f.: „*Vertrauen in die Integrität und Funktionsfähigkeit des Finanzmarktes ist aber ein bedeutsamer Faktor der Standortqualität und Voraussetzung für eine kostengünstige Kapitalaufnahme der Unternehmen. Dieses Vertrauen gilt es zu stärken.* […] *Vor diesem Hintergrund ist es das Ziel des Gesetzentwurfs, [...] den Anlegerschutz zu stärken, indem die Transparenz auf den Wertpapiermärkten erhöht und die rechtlichen Voraussetzungen dafür geschaffen werden, das Verbot der Kurs- und Marktmanipulation und des Missbrauchs von Ad-hoc-Meldungen durchzusetzen*."

[47] BT-Drucks. 14/8017, p. 64.

[48] The functions of Section 826 BGB are discussed at *Wagner*, in: Münchener Kommentar zum BGB (*supra*, note 7), § 826 para 11, 48, 73.

[49] Sections 37b (5), 37c (5) WpHG.

[50] *Supra*, para 30.

[51] Bill to the KapMuG, BT-Drucks. 15/5091, p. 13, 17; cf. also *Möllers/Weichert*, NJW 2005, 2737, 2738.

German government intended the KapMuG to prevent the "regulatory function" of the German law of civil procedure from being pushed aside.[52]

36. Pursuant to the reasoning in the legislative materials, the lawmakers intended to concentrate jurisdiction with the court at the seat of the respective issuer or other responsible party in order to avoid a panoply of competent courts. The reasons underlying this decision reflect the purposes of the KapMuG in general, including the concern for procedural efficiency:

> To the extent feasible, the proposed rule works against the fragmentation of territorial jurisdiction which would otherwise result under the law of international jurisdiction from the competition between the fora at the seat of the defendant, at the place of the harmful act or at the place where assets of the defendant are located.[53]

37. In summary, the German lawmakers have made very clear their intention to have damages claims against German defendants which relate to alleged misinformation of capital markets adjudicated in Germany.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Chicago, IL on June 28, 2011

_____
Prof. Dr. Gerhard Wagner

---

[52] *Zypries*, ZRP 2004, 177, 178.

[53] Bill to the KapMuG, BT-Drucks. 15/5091, p. 33: " *Die vorgeschlagene Regelung wirkt, soweit regelbar, auch einer Zersplitterung der örtlichen Zuständigkeiten auf Grund verschiedener Gerichtsstände entgegen, die sich aus den ansonsten in Betracht kommenden Gerichtsständen des Sitzes des Beklagten, der unerlaubten Handlung oder des Vermögens nach internationalem Zivilprozessrecht ergeben könnten.*"