SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---------------------------------------- x
Viking Global Equities LP, Viking Global Equities II :
LP, and VGE III Portfolio Ltd.,                      :
                                                     :
                    Plaintiffs,                      :  Index No. 650435/2011
            v.                                       :  Honorable Charles E. Ramos
                                                     :  Commercial Division
Porsche Automobil Holding SE, f/k/a Dr. Ing. h.c. F. :  Part 53
Porsche AG,                                          :
                                                     :
                    Defendant.                       :
                                                     :
                                                     :
---------------------------------------- x

---------------------------------------- x
Glenhill Capital LP et al.,                          :
                                                     :
                    Plaintiffs,                      :
            v.                                       :  Index No. 650678/2011
                                                     :  Honorable Charles E. Ramos
Porsche Automobil Holding SE, f/k/a Dr. Ing. h.c. F. :  Commercial Division
Porsche AG,                                          :  Part 53
                                                     :
                    Defendant.                       :
                                                     :
                                                     :
---------------------------------------- x

**SUPPLEMENTAL DECLARATION OF GERHARD WAGNER IN SUPPORT
OF PORSCHE SE'S MOTION TO DISMISS AND MOTION FOR SUMMARY
JUDGMENT**

**SUPPLEMENTAL DECLARATION OF GERHARD WAGNER**

Gerhard Wagner hereby declares as follows:

1.   I have been asked by counsel for Porsche to examine and respond to the Declaration of Professor Christian Armbruester, dated August 5, 2011 ("Armbruester Decl."). This declaration supplements my Declaration dated June 28, 2011 ("Wagner Decl.").

2.   Contrary to Professor Armbruester's arguments, (a) German law provides Plaintiffs with a cause of action to bring claims similar to those raised in the Complaints; (b) German civil practice provides for adequate fact gathering; (c) German substantive law would govern a lawsuit brought by Plaintiffs in Germany; and (d) a U.S. judgment in this case would not be recognized and enforceable in Germany because German law vests exclusive jurisdiction in the German courts.

## I.   AVAILABILITY AND ADEQUACY OF GERMAN REMEDIES

### A.   Capital Markets Fraud Qualifies as a Tort

3.   Professor Armbruester agrees that Section 826 German Civil Code (Bürgerliches Gesetzbuch – "BGB") provides a remedy where pure economic loss is caused intentionally. (Armbruester Decl. ¶¶ 9-10.)  However, he maintains that "under Section 826, it is not sufficient to claim that as a result of capital markets frauds and/or market manipulation, a party suffered only economic losses."  (Armbruester Decl. ¶ 10.)  According to Professor Armbruester, in the leading German case, "the Federal Court undertook extensive fact finding in order to conclude that the defendants were liable under Section 826 for misinformation …, holding that the defendant's actions also violated public policy."  (Armbruester Decl. ¶ 10.)  However, in the judgment cited by Professor Armbruester, the part dealing with public policy is conspicuously short – hardly more than a paragraph.  This is so because the court started from the principle that the intentional misinformation of capital markets amounts to a per-se violation of public policy.[1] Since this decision was handed down, there is no doubt that Section 826 BGB covers capital

---

[1]   BGH, 19.07.2004, Case II ZR 402/02, BGHZ 160, 149, 157 = NJW 2004, 2971: "Hier wird die Verwerflichkeit des Verhaltens allerdings bereits durch das Verhalten der Beklagten indiziert: die direkt vorsätzliche unlautere Beeinflussung des Sekundärmarktpublikums …".

markets fraud. Germany's Federal Supreme Court (Bundesgerichtshof – "BGH") has applied Section 826 BGB to cases of capital markets fraud many times.[2]

### B.  The German Procedural Law on Fact Gathering Is Adequate

4.  While the scope of disclosure under German law is not identical to that provided under U.S. law, German law is not unduly restrictive and does not arbitrarily limit fact gathering.

5.  As explained in my initial declaration, witnesses must appear in court and may be compelled to testify under force of law. (Wagner Decl. ¶ 20.) Professor Armbruester is correct in pointing out that German law includes privileges that allow witnesses not to provide testimony. (Armbruester Decl. ¶¶ 31–33.) Section 384 ZPO does not permit a witness to refuse testimony but to decline to answer particular questions if doing so would require the disclosure of an unpublished work of art or of a business secret, subject the witness to criminal prosecution or if it would cause direct pecuniary loss to the witness or his or her family.[3] The last category is limited to cases of "civil self-incrimination," i.e. to situations where the witness would have to disclose facts that would give rise to a civil claim against him- or herself, spouse or relatives.[4] It is true (Armbruester Decl. ¶ 33) that, in one decision, the German Supreme Court (Bundesgerichtshof – BGH) has embraced a broad reading of this clause[5] – one that I have criticized as overbroad.[6] However, even disregarding the chance that another senate of the BGH might resolve to read Section 384 No. 2 ZPO more narrowly, the decision cited by Professor Armbruester would not seriously limit the scope of fact gathering in German proceedings against Porsche. Where suits against corporate defendants are in issue, the dominant view holds that the privilege against civil self-incrimination is not available if the potential harm in the form of civil

---

[2]  Cf. *Wagner* Decl. ¶ 15 footnote 7.

[3]  Section 384 (No. 1, 2, 3) ZPO.

[4]  *Berger*, in: Stein/Jonas, Zivilprozessordnung, 22nd ed. 2006, § 384 ¶ 3; *Huber*, in: Musielak (ed.), Zivilprozessordnung, 8th ed. 2011, § 384 ¶ 3.

[5]  BGH, 26.10.2006, Case III ZB 2/06, NJW 2007, 155, 156; the other two decisions cited by Professor Armbruester in n. 24 of his declaration, i.e. BGH, 17.10.1996, Case IX ZR 293/95, NJW 1997, 128, and BGH, 7. 12. 1999, Case XI ZR 67/99, NJW 2000, 1108, 1109, do not cite Section 384 ZPO and do not deal with the scope of the privilege against self-incrimination.

[6]  *G. Wagner*, Urkundenedition durch Dritte – Deutsches Recht und amerikanische Discovery, in: Festschrift Leipold, 2008, p. 801, 809.

liability would be suffered not by the witness him- or herself but by the corporate entity where the witness is or was employed.[7] Thus, the former and current employees of Porsche would be forced to testify and could not refuse on the ground that their testimony might harm Porsche's financial interests.

6. In respect of the former Porsche officers Wendelin Wiedeking and Holger Haerter, Professor Armbruester points out that, within hypothetical proceedings in Germany, they would be under no obligation to testify as witnesses. (Armbruester Decl. ¶ 32.) This argument must be understood to say that they could be compelled to testify but that they would be entitled to decline to answer particular questions under Section 384 ZPO because they are still subject to criminal investigations and would risk civil liability to their own detriment. However, Professor Armbruester's conclusion that Section 384 ZPO would apply to Messrs. Wiedeking and Haerter assumes that neither individual was named as a defendant in the case.[8] The privileges granted to witnesses by Sections 383, 384 ZPO are available to third parties only and do not apply to the litigants themselves.[9] With regard to the parties to a law suit, Section 138 (1) ZPO stipulates a duty to tell the truth, and nothing but the truth. Pursuant to the dominant view, this principle even trumps the privilege against self-incrimination.[10]

7. This state of the law, that current employees of Porsche may not refuse to testify and that Porsche's former officers Wendelin Wiedeking and Holger Haerter had no privileges if

---

[7] *Damrau*, in: Münchener Kommentar zur Zivilprozessordnung, 3rd ed. 2008, § 384 ¶ 7; *Huber*, in: Musielak (*supra*, note 4), § 384 ¶ 3; *Greger*, in: Zöller, Zivilprozessordnung, 28th ed. 2010, § 384 ¶ 4; dissenting *Hartmann*, in: Baumbach, Zivilprozessordnung, 69th ed. 2011, § 384 ¶ 4; undecided BGH, 26.10.2006, Case III ZB 2/06, NJW 2007, 155-156.

[8] Cf. Sections 445, 446 ZPO.

[9] *Greger*, in: Zöller (*supra*, note 7), Vor § 445 para 6; *Zekoll/Bolt*, Die Pflicht zur Vorlage von Urkunden im Zivilprozess – Amerikanische Verhältnisse in Deutschland?, NJW 2002, 3129, 3130; *G. Wagner*, Urkundenedition durch Prozessparteien – Auskunftspflicht und Weigerungsrechte, JZ 2007, 706, 715.

[10] *Stadler*, in: Musielak (supra note 4) § 138 ¶ 3; *C. Wagner*, in: MünchKommZPO (supra note 7), § 138 ¶ 15; *Greger*, in: Zöller (*supra*, note 7), § 138 ¶ 3; *Martens*, Noch einmal: Wert und Unwert der Relationstechnik, JuS 1974, 785, 789; dissenting *Leipold*, in: Stein/Jonas, Zivilprozessordnung, 22nd ed. 2005, § 138 ¶ 13.

they were joined as defendants, also governs the duty to produce documentary evidence, either in the form of hardcopies or of emails.[11]

8.  On the other hand, should the case be tried in New York, discovery would be a complex and burdensome process because Porsche would remain subject to the restrictions of the German Federal Data Protection Act (Bundesdatenschutzgesetz – the "Data Protection Act").[12] (Wagner Decl. ¶ 24.)  Professor Armbruester is correct in pointing out that the concern of the Data Protection Act is not a property interest in the data but the right to informational privacy that is protected by the German constitution.  (Armbruester Decl. ¶ 34.)[13]  But this is exactly the problem.  Because Porsche must respect the privacy interests of third parties, there are obstacles to its ability to comply with potential discovery requests of the Plaintiffs and potential orders of the New York court.  Rather, Porsche remains under the duty, imposed by German law, to protect the privacy of its current and former employees.  What is at stake here is not Porsche's own interest in confidentiality of its own data but the rights of privacy of the senders and recipients of all the emails which are stored in Porsche's electronic archives.  These parties are vested with constitutionally protected rights, which may include rights against the disclosure of the contents of the emails they sent and received and even of the fact that they sent or received a particular message at all.[14]  Such rights may be enforced in the labor courts,[15] not only through claims for damages[16] but also through injunctions enjoining Porsche to transmit protected information to third parties.[17]  In addition, Porsche would run the risk of incurring administrative

---

[11]  Section 142 (2) ZPO; BGH, 26.10.2006, Case III ZB 2/06, NJW 2007, 155; *Greger*, in: Zöller (*supra*, note 7), § 142 ¶ 13; *Leipold*, in: Stein/Jonas (*supra*, note 10), § 142 ¶ 26.

[12]  The English version is available from the homepage of the Federal Commissioner for Data Protection and Freedom of Information at http://www.bfdi.bund.de/cln_111/EN/DataProtectionActs/DataProtectionActs_node.html.

[13]  Federal Constitutional Court (Bundesverfassungsgericht – BVerfG), 15.12.1983, 1 BvR 209/83, BVerfGE 65, 1.

[14]  *Däubler*, Gläserne Belegschaften?, 5th ed. 2010, ¶ 351 seq.

[15]  Section 2 (1) (No. 3d) Labor Courts Act (Arbeitsgerichtsgesetz); cf. *Gabel*, in: Taeger/Gabel (eds.), Kommentar zum BDSG, 2010, § 7 ¶ 22.

[16]  The legal basis for the damage remedy is Section 7 Data Protection Act.

[17]  *Taeger*, in: Taeger/Gabel (*supra*, note 15), § 28 ¶ 237; *Däubler* (*supra*, note 14), 5th ed. 2010, ¶ 578.

liability carrying substantial monetary penalties for unauthorized transmission and disclosure of emails under Section 43 (2) (No. 1) Data Protection Act.

9. It is anything but clear whether protective orders imposed by the New York court would be enough to accommodate these concerns, quite apart from the fact that it remains unclear what exactly such orders should call for.[18] This is confirmed by the very sources cited by Professor Armbruester. (Armbruester Decl. ¶ 34 n. 28.) These authors emphasize that the data of employees and other third parties deserve a high level of protection because these parties never conducted their personal or business affairs in the U.S.[19] They express the view that it remained a matter of speculation whether safeguards such as protective orders, filing under seal, the transmission of data only to neutral parties rather than the claimants themselves, and the submission of all parties to safe-harbor rules, would be sufficient to satisfy the demands of the Data Protection Act.[20]

10. It bears to be pointed out that the Federal Constitutional Court (Bundesverfassungsgericht – BVerfG), in its decision touching upon U.S.-style discovery cited by Professor Armbruester (Armbruester Decl. ¶ 34 n. 29), did not say anything on the right of informational privacy because such right was not in issue in that case.[21] Rather, the court merely had to answer the question whether U.S.-style discovery was so much at odds with fundamental guarantees of the German constitution that service of process should be denied in Germany. The constitutional court held that this was not so, precisely because the German courts retained the authority to protect these rights in due course under the procedures for mutual legal assistance under the Hague Evidence Convention.[22] It is conceivable that parties to the U.S. litigation might attempt to compel the production of German documents without resort to the Hague Evidence Convention, for example, by seeking a U.S. court order directing Porsche to produce

---

[18] Cf. *Gabel*, in: Taeger/Gabel (*supra*, note 15), § 4c ¶ 11; *Lux/Glienke*, US-discovery versus deutsches Datenschutzrecht, RIW 2010, 603, 605 seq.

[19] *Spies/Schröder*, Auswirkungen der elektronischen Beweiserhebung (eDiscovery) in den USA auf deutsche Unternehmen, MMR 2008, 275, 280.

[20] *Spies/Schröder*, Auswirkungen der elektronischen Beweiserhebung (eDiscovery) in den USA auf deutsche Unternehmen, MMR 2008, 275, 279-280.

[21] BVerfG, 24.1.2007, 2 BvR 1133/04, Case 1 BvR 1133/04, BeckRS 2009, 30349.

[22] BVerfG, 24.1.2007, 2 BvR 1133/04, Case 1 BvR 1133/04, BeckRS 2009, 30349 ¶ 16.

documents and emails. However, the current and former employees of Porsche would still retain the ability to intervene and to seek an injunction from a German labor court compelling Porsche not to comply with such an order. Against this background it seems fair to hold on to the conclusion, reached in my initial declaration, that discovery in New York would be "complex and burdensome." (Wagner Decl. ¶ 24.)

## II.   GERMAN SUBSTANTIVE LAW GOVERNS THE DISPUTE

11.     Professor Armbruester argues that a German court hearing the claims now pending in the United States would have to apply U.S. law to the substance of the dispute. (Armbruester Decl. ¶¶ 11-14.) Specifically, he concludes that Plaintiffs retained the right to opt in favor of U.S. law as the law of the place of injury (Erfolgsort). However, case law supporting this conclusion does not exist.[23]

12.     In contrast to Professor Armbruester's position, the prevailing view is that, regardless of the place of injury, German substantive law controls in cases involving misstatements affecting the shares of a corporation listed in Germany and thus affecting the integrity of the German capital markets.[24] An alternative opinion voiced by commentators argues that the corporate law of the issuer should control because the liability for misinformation

---

[23] The European Court of Justice addressed the parallel issue in the context of choice of forum, i.e. jurisdiction; cf. ECJ, 10.06.2004, C-168/02 (*Rudolf Kronhofer ./. Marianne Maier et al.*), ECR 2004, I-6009. The court rejected the notion that the "place where the harmful event occurred" under Art. 5 No. 3 Brussels I can be interpreted to mean the place where the victim's assets are located. In doing so, the court stressed the need to enable "the defendant reasonably to foresee in which court he may be sued" (*ibid*, ¶ 20). The concern of foreseeability is all the more relevant to choice of law and requires that only German law applies in the present case (*infra*, ¶ 14).

[24] Cf. *Grundmann*, Deutsches Anlegerschutzrecht in internationalen Sachverhalten, RabelsZ 54 (1990), 283, 308; *Kronke*, Capital Markets and Conflict of Laws, Académie de Droit International, Recueil des Cours 286 (2001), p. 245, 310; *Fleischer*, Empfiehlt es sich, im Interesse des Anlegerschutzes und zur Förderung des Finanzplatzes Deutschland das Kapitalmarkt- und Börsenrecht neu zu regeln?, Gutachten F für den 64. Deutschen Juristentag, in: Verhandlungen des Vierundsechzigsten Deutschen Juristentags, Vol. I, 2002, p. 89. The same view dominates also with regard to prospectus liability applicable in cases of initial public offerings. Cf. *Hopt*, Emission, Prospekthaftung und Anleihetreuhand im internationalen Recht, in: FS Werner Lorenz, 1991, p. 413, 422; *Schnyder*, in: Münchener Kommentar zum BGB, 5th ed. 2010, IntKapMarktR, ¶¶ 97-102.

of capital markets is part of the regime of corporate governance.[25] Regardless of whether the former or the latter view is the right one, German law would control in the present case because Porsche and VW are German corporations and the transactions underlying the claim were related to VW shares traded on the German stock exchange but not on an American exchange.

13. The result that German law controls may be achieved through a normative interpretation of the concepts used in Art. 40 (1) Introductory Act to the Civil Code (Einführungsgesetz zum Bürgerlichen Gesetzbuch – "EGBGB"), i.e. the place of the act (Handlungsort) and the place of injury (Erfolgsort), as is regularly done in competition law.[26] Furthermore, and as an alternative, Art. 41 (1) EGBGB explicitly provides for the application of the substantive law that is more closely connected to the case, rather than the law of the place of the injury. For the same reasons that underlie the strong and legitimate governmental interests of Germany to regulate behavior on the German capital markets (Wagner Decl. ¶¶ 31-34), the German substantive law has the closest connection to disputes involving securities issued by a German corporation that are being traded on German exchanges. If transactions related to German securities were subjected to other legal regimes, issuers and investors participating in the German capital markets would run the risk that their behavior was being measured against standards that they were unable to foresee and comply with at the time of the transaction. In addition, they would run the risk of being subject to conflicting legal duties.

14. In conclusion, German law would apply in order to preserve the regulatory function of German capital markets law, including its liability regimes.

### III. NO RECOGNITION AND ENFORCEMENT OF A U.S. JUDGMENT IN GERMANY

15. Professor Armbruester doubts the conclusion reached in my initial declaration (Wagner Decl. ¶¶ 25-30) that a judgment rendered by the New York court in the present case would not be enforceable in Germany as Section 32b ZPO vests exclusive jurisdiction in German courts. (Armbruester Decl. ¶¶ 15-26.) However, my conclusion was recently confirmed by a decision of the Stuttgart district court that has ruled on a claim brought against Porsche based on

---

[25] *Hellgard/Ringe*, Internationale Kapitalmarkthaftung als Corporate Governance, ZHR 173 (2009), 802, 827-833.

[26] *G. Wagner*, in: Anwaltskommentar zum BGB, 2005, Art. 40 ¶ 71.

similar allegations as the claims here.  (Wagner Decl. ¶ 28 n. 38 and 39.)  Contrary to Professor Armbruester's contention, the decision has been published in a journal focused on capital markets law.[27]  His criticism that application of Section 32b ZPO in such a case to the effect that jurisdiction is vested in the court at the seat of the target company "would clearly be an incorrect application of the law" (Armbruester Decl. ¶ 18 n. 12) is unfounded.  After a thorough analysis of the language of Section 32b ZPO, its legislative history and purpose, the Stuttgart court concluded that Section 32b ZPO applied and that VW was the "issuer" within the meaning of the statute.[28]

16.  In fact, the legislative materials to the bill introducing Section 32b ZPO emphasize that the scope of the provision is not limited to suits against "issuers."[29]  Professor Armbruester suggests that Section 32b ZPO requires an affiliation between the defendant and the issuer.  (Armbruester Decl. ¶¶ 16-22.)  However, such an element is neither contained in the language of the statute nor can it be found anywhere in the relevant legal materials.  Rather, commentators agree that Section 32b ZPO is not limited to particular defendants but applies to all suits for damages based on misinformation of capital markets.[30]  I am aware of no other commentator limiting Section 32b ZPO to parties who have a relationship with the issuer, and Professor Armbruester has cited none.  Professor Armbruester argues that the BGH has decided that Section 32b (1) ZPO does not apply "when an investor sued an investment consultant who had included incorrect capital market information in his recommendations."  (Armbruester Decl. ¶ 19.)  While this is true, the court reached this result not by limiting the scope of potential defendants, but by applying the statutory requirement that the alleged wrongdoing must involve the misinformation of the *public*, and by holding that Section 32b ZPO does not reach cases

---

[27] Landgericht Stuttgart, 3.5.2011, Case 12 O 3/11, WM (Wertpapiermitteilungen) 2011, 1511.

[28] Landgericht Stuttgart, 3.5.2011, Case 12 O 3/11, WM (Wertpapiermitteilungen) 2011, 1511, 1512-1516.

[29] Bill of the KapMuG, BT-Drucks. 15/5091, p. 33.

[30] Explicitly: *Lange*, in: Prütting/Gehrlein, Zivilprozessordnung, 2nd ed. 2010, § 32b ¶ 2; *Parriger*, in: Vorwerk/Wolf, KapMuG, 2007, § 32b ¶ 7; *Bachmann*, Die internationale Zuständigkeit für Klagen wegen fehlerhafter Kapitalmarktinformation, IPRax 2007, 77, 85; *Vollkommer*, Neue Wege zum Recht bei kapitalmarktrechtlichen Streitigkeiten – Erste Erfahrungen mit dem Gesetz zur Einführung von Kapitalanleger-Musterverfahren, NJW 2007, 3094, 3095.  As far as I can see, no one argues the contrary.

where the victim was misled in private conversation with his or her advisors.[31] As the claims before the court in the U.S. clearly refer to alleged misinformation and non-information of the public, Section 32b ZPO remains applicable to the case at hand.

17. In conclusion, a judgment rendered by the court in the U.S. would not be recognized and enforced in Germany.

---

[31] BGH, 30.1.2007, Case X ARZ 381/06, NJW 2007, 1364 ¶ 11; BGH, 7.2.2007, Case X ARZ 423/06, NJW 2007, 1365 ¶ 12.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Bonn, Germany, on August 22nd, 2011

_____

Prof. Dr. Gerhard Wagner

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Bonn, Germany, on August 22nd, 2011

_____

Prof. Dr. Gerhard Wagner

-10-

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Bonn, Germany, on August 22nd, 2011

_____

Prof. Dr. Gerhard Wagner