UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re *Ex Parte* Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | Case No. 1:15-mc-00417 (LAK) |

DECLARATION OF ANDREAS W. TILP
IN SUPPORT OF MOTION TO VACATE § 1782 ORDER, AND FOR OTHER RELIEF

ANDREAS W. TILP declares pursuant to 28 U.S.C. § 1746 as follows:

1.      I am the Managing Director of the German law firm TISAB

Rechtsanwaltsgesellschaft mbH, ("TISAB") based in Kirchentellinsfurt, located near Tübingen,

Germany.  TISAB is lead counsel for the plaintiffs in legal proceedings captioned *Effecten-

Spiegel, et al. v. Porsche Automobil Holding S.E.*, Docket No. 18 O 175/15, currently pending in

the Regional Court of Hanover in Germany (the "German Action").  I am licensed to practice

law in Germany.  Except as otherwise indicated, all statements in this declaration are based upon

my personal knowledge and experience, or upon my review of records maintained by TISAB in

the regular course of its representation of the plaintiffs in the German Action.

2.      My legal experience relevant to the subjects addressed in this declaration includes

serving as one of nine experts for the Legal Committee of the German Parliament in Berlin

regarding reforms in 2012 to the KapMuG statute discussed in paragraphs 10 - 14 below.  I am

Vice President of the Legislation Committee for Bank and Capital Market Law of the German

Attorneys Association, and a Tutor for the German Attorneys Association.  I am also counsel for

plaintiffs in certain parallel cases before the same court which are described in paragraph 15 below.

3.     I have been informed that Porsche Automobil Holding S.E. ("Porsche"), which is the defendant in the German Action, has obtained *ex parte* orders from the United States District Courts for the Southern District of New York and the District of Connecticut authorizing it to take discovery in the United States from Marble Arch Investments, LP, which is one of the plaintiffs in the German Action; Marble Arch Investments GP, LLC, which is the general partner of Marble Arch Investments, LP; and from ten (10) other entities that are closely related to other plaintiffs in the German Action (collectively, the entities from which Porsche seeks discovery in the United States are referred to as the "Subpoenaed Parties").  I make this declaration for submission in support of the motion by the Respondents to vacate the § 1782 order issued by this Court on 29 December 2015 (the "Order").

4.     Counsel for Porsche did not notify TISAB of their intention to apply for the § 1782 orders.  Counsel for Porsche in the United States, Sullivan & Cromwell LLP, first notified TISAB of the 22 document and deposition subpoenas issued to the Subpoenaed Parties, and provided copies of same, by an e-mail message that I received in Germany at 1:12 a.m. on 14 January 2016.  By that time I had already been notified by several clients that the subpoenas had been served on them in the United States.

5.     I have read and understood the English declaration submitted to this Court in support of Porsche's § 1782 application by Porsche's German counsel, Dr. Markus Meier.

**Parties To The German Action**

6.     The German Action was filed on 26 February 2015 on behalf of 32 plaintiffs that are institutional investors from Germany, Australia, Bermuda, Canada, Cayman Islands, Ireland,

Norway and the United States of America.  In addition to Marble Arch Investments, LP, twenty (20) other plaintiffs in the German Action are United States entities or Cayman Islands affiliates of United States entities:  FVP Master Fund, LP; FVP US-Q, LP; Impala Fund LP Delaware; Impala Fund Ltd. Cayman Islands; Janus Capital Management LLC (represented by U.S. Bank NA); US Bank NA/PMC International Equity Fund; Point72 Associates, LLC; Point72 Associates LLC; Point72 International Holdings, LLC; Shell Pension Trust; State-Boston Retirement Fund System; Tremblant Concentrated Fund LP; Tremblant Concentrated Master Fund LP; Tremblant Partners LP; Tremblant Partners Master Fund LP; Tremblant Super Concentrated Fund Ltd.; Tremblant-Trident Partners LP, Tremblant-Trident Partners Ltd.; UFCW Pension (represented by U.S. Bank NA); and Utah Retirement Systems.  Nine (9) of these plaintiffs are closely related to the Subpoenaed Parties, and are referred to in this declaration as the "U.S. Plaintiffs."  None of the plaintiffs in the German Action was a plaintiff in any of the VW-related law suits filed against Porsche in the United States.

**Allegations In The German Action**

7.     The claims asserted against Porsche stem from an allegedly concealed plan to take over Volkswagen AG ("VW").  At the beginning of March 2008, Porsche repudiated press releases that stated its interest in acquiring 75% of VW's common stock.  Between March and October 2008 Porsche repeatedly denied rumors and confirmed that it had no plans to acquire 75% of VW's common stock.  On 26 October 2008, after repeatedly denying that it was seeking a 75% stake in VW, Porsche disclosed that it owned 42.6% of VW's common stock and controlled a further 31.5% through "cash-settled" options, representing control of a total of 74.1%.  Porsche also announced its intention to increase its ownership to 75% in 2009, and to ultimately take over and control VW (which would require 80% of VW common stock according

to the German VW Act).  This news had the effect of dramatically increasing the price of VW

stock, causing a "short squeeze" in which investors who had sold VW stock short prior to

Porsche's 26 October 2008 announcement were forced to cover their positions thereby incurring

enormous losses.

8.      The German Action asserts claims on behalf of three groups of investors in VW

securities who suffered damage as a result of alleged misrepresentations by Porsche in 2008:

"early sellers," "short sellers," and option holders.  Six (6) of the plaintiffs that are U.S. entities

or affiliates of U.S. entities were early sellers of VW stock:  Janus Capital Management, LLC;

State Boston Retirement Systems; Shell Pension Trust; UFCW Pension; and Utah Retirement

Systems.  Early sellers assert claims for damage due to the fact that they would have sold their

VW shares at a much higher price if they had been informed by Porsche about their intent and

stock holdings on VW common stock.  The claim is based on § 826 of the German Civil Code

(Bürgerliches Gesetzbuch or BGB) – which is a claim for impairment based on an action against

public policy / acts contrary to honest practices.  The second claim is a claim for fraudulent

behavior in violation of BGB § 823 II which provides for damages due to the infringement of a

protective law.  In addition, the early sellers ask for damages under the law of unfair competition

(Gesetz gegen unlauteren Wettbewerb) since Porsche tried to get VW common stock for a better

price than the rest of the participants of the stock market by hiding relevant information about its

stock holdings and options.  Early sellers ask for damages based on the law against restraints on

competition (Gesetz gegen Wettbewerbsbeschränkungen).

9.      The other plaintiffs that are U.S. entities and affiliates of U.S. entities, including

the U.S. Plaintiffs, were short sellers of VW securities.  Short sellers assert claims for damages

resulting from the allegedly false publication by Porsche on 26 October 2008. The legal claims

4

are the same as the ones for the early sellers.  Certain put option holders during the relevant time assert the same claims for damages due to the fact that they lost the option premium.

**Kapitalanleger-Musterverfahren (KapMuG) Procedure**

10.     Simultaneously with filing the German Action, the plaintiffs filed a Model Case Application under the Capital Markets Model Case Act ("KapMuG").  KapMuG is a statute that was first introduced in 2005, with the objective of efficiently consolidating similar investor claims and allowing for a single trial of common issues in such claims.  Germany does not have class actions.  In 2005, following the collapse in the price of shares of the German company Telekom in 2000, and after thousands of Telekom investors came forward to file claims relating to that collapse, Germany adopted a system allowing for the use of "model" cases to establish common questions in the mass securities or investor tort context.  The purpose of the KapMuG is to improve the procedural means for investors to put forward their claims in court collectively and, thereby, to strengthen the effective legal protection of individuals against companies, the efficiency of the capital markets and the confidence in their functioning.  (Explanatory memorandum to the bill of the KapMuG, BT-Drucks. 15/5091, p.13; Begründung des Gesetzentwurfs, Bundestagsdrucksache 15/5091, S. 13).  An English translation of the KapMuG statute prepared by the German Ministry of Justice and Consumer Protection is attached hereto as Exhibit 1.

11.     TILP Rechtsanwaltsgesellschaft mbH, the sister law firm of TISAB, is the court-appointed lead counsel for the plaintiffs in the Telekom case, the first case commenced under the KapMuG procedure and to receive KapMuG treatment.  TILP Rechtsanwaltsgesellschaft mbH is also the court appointed lead counsel in the KapMuG proceedings against the German banks Hypo Real Estate and Coreal Credit Bank.

12.     The KapMuG procedure consists of three stages.  First, upon the application by a plaintiff investor, the trial court (in this case, the Regional Court of Hanover) must determine whether the plaintiff's claims present issues that are suitable for model case treatment.  KapMuG §§ 2, 3.  Model case treatment is appropriate for claims for damages based on the publication of allegedly false or misleading public capital markets information.  KapMuG § 1.  Common issues may include whether a prospectus or press release was false and misleading, or whether an issuer has breached other duties.  If the trial court denies the KapMuG application, that determination cannot be appealed and the applicant's case will proceed as a normal civil case.  KapMuG § 3.  If the trial court grants the KapMug application, the applicant's case is interrupted during the second stage.  KapMuG § 5.

13.     In the second stage, the trial court is required to publish its determination and the establishment of a KapMuG Complaint Registry in the German Federal Gazette.  KapMuG § 3.  If, within six (6) months of publication in the German Federal Gazette at least nine (9) other applications have been made for model case treatment, the KapMuG proceeds to the third stage.  Under Section 3(IV), the trial court may abstain from publication in the German Federal Gazette if it grants ten (10) KapMuG applications in the first stage.  KapMuG § 3(4).  In that situation, the third stage can commence immediately without publication.

14.     In the third stage, the trial court refers the common issues to the Higher Regional Court (in this case, the Higher Regional Court of Celle), which selects the plaintiff for the model case and tries the model case.  KapMuG §§ 6, 10-16.  The referral suspends all pending cases that would be impacted by the model case determination, regardless of whether the plaintiffs in those cases have applied for KapMuG.  KapMuG § 8. The Higher Regional Court's order on the model case may be appealed on points of law to the German Constitutional Court, the highest

appellate court in Germany.  KapMuG § 20.  Once the order on the model case becomes final, it is binding on the parties to all of the pending cases that were suspended after the KapMuG determination.  § 22.  Each of those cases is then resolved by the trial court (in this case, the Regional Court of Hanover) which tries any individual issues not resolved by the model case order.  Examples of individual issues in capital markets cases include reliance, damages, and, most significantly here, statutes of limitations.

**The Current Procedural Status Of The German Action**

15.     The German Action is one of four (4) civil cases against Porsche currently pending before Judge Kleybolte in the Regional Court of Hanover in which a total of thirty-five (35) plaintiffs have applied for KapMuG treatment.  The other three cases are:  *ARFB Anlegerschutz UG v. Porsche Automobil Holding S.E.*, Docket No. 18 O 96/15l; *ARFB Anlegerschutz UG v. Porsche Automobil Holding S.E. and Volkswagen AG*, Docket No. 18 O 89/15; and *Dr. Rall v. Porsche Automobil Holding S.E.*, Docket No. 18 O 333/14 (together with the "German Action," the "Related Actions").  Since 14 May 2014, TISAB has been counsel to ARFB Anlegerschutz AG in two of the Related Actions.  There are at least three (3) other VW-related cases pending against Porsche in Germany.  The 33 plaintiffs in those other cases have not yet sought KapMuG treatment.

16.     Porsche filed its statement of defense and opposition to the KapMuG procedure in the German Action on 31 July 2015.  Porsche interposed a statute of limitations defense against all plaintiffs in the German Action, alleging that the applicable three (3) year statute of limitations commenced to run at the latest in 2011, such that plaintiffs' claims under BGB §§ 826 and 823 II had to be filed no later than 31 December 2014.  *See* BGB §§ 195, 199.  Under § 199 of the German Civil Code (BGB), the applicable limitations period begins to run at the end

7

of the calendar year in which (1) the claim arose and (2) the plaintiff either has knowledge of the circumstances giving rise to the claim and the identity of the defendant, or would have obtained such knowledge if he had not shown gross negligence.  BGB § 199.  Under German law, gross negligence requires a breach of due care that is objectively substantial and subjectively inexcusable.  Gross negligence has been found, for example, where a plaintiff had signed a two page declaration for membership in a closed-end fund without reading it (Oberlandesgericht Frankfurt, Urteil vom 29.09.2014, 23 U 241/13) and where a plaintiff had failed to read the annual report of a closed-end fund in which he was an investor.  Oberlandesgericht Brandenburg, Urteil vom 04.03.2015, 4 U 46/14.

17.    Porsche has not asserted a statute of limitations defense with respect to the BGB §§ 823 II and 826 claims asserted by the plaintiffs in any of the other Related Actions.  Porsche has asserted the statute of limitations defense against one of the plaintiffs in a case in which there has not been an application for KapMuG treatment.

18.    The plaintiffs in the Related Actions have made submissions to the Regional Court in Hanover, based on precedent, that under the KapMuG statute, Porsche's limitations defense should not be considered in connection with the resolution of the KapMuG applications. *See Höge vs. Barclays Bank PLC*, Landgericht Frankfurt am Main, Beschluss vom 27.09.2013, 2-12 OH 4/13, II.5 ("[I]t is … irrelevant … whether the Plaintiffs are actually the current claimants….  Nor does it have to be examined in the preliminary ruling procedure…whether any claims are statute barred.") (*See* Certified translation of excerpt from this opinion at Exhibit 5 hereto).  To date, each side has made two written submissions to the Regional Court in Hanover concerning the plaintiffs' KapMuG application.

19.     A hearing concerning the pending applications for KapMuG was held before Judge Kleybolte in the Related Actions on 8 December 2015.  Under German procedure, court hearings that do not involve the examination of witness are not conducted on the record. However, counsel who appear at a hearing are permitted to engage a court reporter to prepare a transcription of the proceedings at their own expense and for their own use.  There is no obligation for counsel to provide a copy of the transcript to opposing counsel.  It is my firm's practice to engage a court reporter for important hearings and we routinely offer to share the transcript and the cost of its preparation with counsel for all other parties to the case.  We engaged Andreas Olschewsky to attend and transcribe the proceedings before the Regional Court of Hanover on 8 December 2015.  Counsel for Porsche, Dr. Meier, declined to share the cost of producing the transcript and we have not shared the transcript with them.  I have attached as Exhibit 2 hereto a true and correct copy of pages 1, 3, and 20-21 of the transcript prepared by Mr. Olschewsky, along with a certified English language translation of those pages.  I have highlighted the portion of the pages of the original German transcript that have been translated.

20.     I disagree with Dr. Meier's characterization of Judge Kleybolte's remarks at the 8 December 2015 hearing.  *See* Meier Dec. at ¶¶ 27, 32.  As the court has made clear, the standard for determining whether the statute of limitations has commenced to run under § 199 of the BGB can be satisfied by demonstrating that the plaintiff was grossly negligent in not obtaining knowledge of the facts giving rise to his claim.  *See* Exhibit 2 at p. 4 of 11 ("[I]f you rely on press reports, you have to name the exact article, list the information and you have to do one more thing, in some form you also have to establish that the party in question, whose knowledge counts in the case, had known about this press release *or could have taken notice of it*.") (emphasis added).

21.     Pursuant to the protocol set by Judge Kleybolte on 8 December 2015, each side in the Related Actions now has the opportunity to make one more written submission to the German court before Judge Kleybolte issues his decision on plaintiffs' KapMuG application on 13 April 2016.  Plaintiffs' final submission is due on 29 February 2016, Porsche's submission in response to plaintiffs' submission of 24 November 2015 is due on 15 March 2016.  The KapMuG decision will be issued by Judge Kleybolte in writing.  There is no hearing scheduled in any of the Related Actions in April 2016.

22.     In his declaration at paragraph 28, Dr. Meier states that the "Regional Court of Hanover is expected to make a preliminary ruling on PSE's statute-of-limitations defense in April 2016."  The only ruling scheduled in the German Action in April 2016 is the KapMuG determination referenced in the prior paragraph.   As noted above, Porsche does not claim that the BGB §§ 823 II and 826 claims asserted by the plaintiffs in any of the other Related Actions are time-barred.  For the reasons previously explained, the statute of limitations defense is an individual issue that is not appropriate for determination in a model case, and should not be considered in connection with the KapMuG applications.  Therefore, Porsche's statute of limitations defense against the plaintiffs in the German Action is not expected to be determined – even on a "preliminary" basis – as part of 16 April KapMuG ruling.

23.     It is unclear to me what Dr. Meier could be referring to as a "preliminary ruling" on Porsche's statute of limitations defense.  Under German procedure, a statute of limitations defense is ordinarily determined at trial on the merits, not on the basis of pleadings only.  Any submission Porsche makes on 15 March 2016 will be considered by Judge Kleybolte in connection with the KapMuG determination only.  Judge Kleybolte does not have the option at this time of dismissing the claims of the plaintiffs in the German Action.

24.     As a procedural matter, Porsche is under no obligation to make submissions on 15 March 2016 in support of its statute of limitations defense.  In fact, the purpose of Porsche's 15 March 2016 submission, under the protocol issued by the German court on December 8, 2015, is to respond to the plaintiffs' written submission dated 24 November 2015 concerning Porsche's entire statement of defense (not merely the statute of limitations issue).

25.     Porsche will have a full opportunity to present its submissions on the merits of its statute of limitations defense at the trial of the claims of the plaintiffs in the German Action, whether or not the model case procedure is invoked.  It is also the case that Porsche has the right to apply to the Regional Court of Hanover for additional time to make its supplemental submission on the KapMuG issues.  In the past, Porsche obtained an extension of the deadline for submission of its statement of defense in the German Action.  To my knowledge, Porsche has not made such a request to Judge Kleybolte with respect to the 15 March deadline.

**German Fact Gathering Procedures**

26.     The Respondents' U.S. counsel have brought to my attention two declarations of Dr. Gerhard Wagner filed in the Supreme Court of New York County in the case *Viking Global Equities, LP v. Porsche Automobil Holding SE*, Index No. 650435/2011.  I have read and agree with Dr. Wagner's description of the scope of pre-trial discovery, the fact-gathering authority of German trial courts and the ability of the parties to petition the court to gather evidence.  *See* Declaration of Gerhard Wagner In Support of Porsche Automobil Holding SE's Motion To Dismiss (NYSCEF Doc. No. 11) (reproduced as Exhibit (Ex.) 6 to the concurrently filed Declaration of Ralph M. Stone in Support of Motion to Vacate Section 1782 Order) at ¶¶ 5, 18-22; Supplemental Declaration of Gerhard Wagner In Support Of Porsche Automobil Holding SE's Motion to Dismiss and for Summary Judgment (NYSCEF Doc. No. 66) (reproduced as

Stone Ex. 7) at ¶¶ 4-5.  The German court that ultimately determines the merits of Porsche's statute of limitations defense in the German Action (most likely, the Regional Court of Hanover) will have authority to compel the parties and third parties to produce specific documents and to testify.  Porsche will have the right to present evidence, examine witnesses and petition the court to gather further evidence.

27.     The Regional Court in Hanover has not authorized Porsche's effort to take discovery in the United States under § 1782.  To my knowledge, Porsche has not informed the Regional Court in Hanover of the discovery proceedings it has commenced in the United States. As noted in paragraph 4 above, Porsche did not notify TISAB of these proceedings or the subpoenas it had served on our clients until 15 January 2016.  This Court should not conclude that the Regional Court of Hanover has in any way suggested or endorsed Porsche's § 1782 application – it has not.

28.     To date, Porsche has not sought any discovery in the German Action.  Under Section 142 Code of Civil Procedure (Zivilprozessordnung - ZPO) any party has the right at any time to request the court to compel both the parties to the lawsuit and third parties to produce documents that are clearly identified with respect to the date, author, title and contents.

**Relevance Of Discovery Porsche Seeks**

29.     In his declaration, Dr. Meier refers to media articles containing:  information about the Stuttgart prosecutor's investigation into potential criminal activity by Porsche's former CEO and CFO and civil suits filed against Porsche by other VW investors, and speculation concerning Porsche's alleged liquidity problems in 2008 and the timing of its decision to acquire 75% of VW.  *See* Meier Decl. at ¶ 31.  Dr. Meier seeks to create the impression that the publicly available information about Porsche's transactions in VW securities triggered the running of the

three year statute of limitations applicable to plaintiffs' claims before 1 January 2012, and that those claims were statute barred when the German Action was filed on 26 February 2015 (not on 2 March 2015 as stated by Dr. Meier).

30.     It is important for this Court to understand that, to date, Porsche has not publicly acknowledged any wrongdoing by Porsche or its senior management in connection with transactions in VW securities.  Porsche maintains that the criminal investigations, and criminal and civil proceedings against Porsche and its senior management are without merit.  This is reflected, for example, in Dr. Meier's declaration and also in excerpts from Porsche's 2015 Interim Report annexed as Exhibit D to the Declaration of Porsche's U.S. counsel Robert J. Giuffra, Jr. at pp. 3, 4, 5, 6, 8, 9.  Thus, Porsche's statute of limitations defense is, in effect, that in 2008 to 2011 the plaintiffs in the German Action knew or were grossly negligent in not knowing about facts Porsche claims do not exist.

31.     German law and U.S. law differ with respect to the type of information that is sufficient to trigger the running of the statute of limitations in a capital markets case.  As I understand, under U.S. law an investor's claim may be statute barred if publicly available information was sufficient to cause a prudent investor to inquire into the possibility that he may have a claim.  Under German law, more information is required.  Under German law, the fact that another investor has filed a lawsuit against Porsche, and even when newspaper articles reciting its allegations have been published, or access to a copy of a pleading has occurred, is not sufficient to trigger the running of a statute of limitations.  *See* Kammergericht (Berlin), Urteil vom 01.10.2009, 2 U 17/03.  Pleadings in German courts, including exhibits and proffers of evidence attached thereto, are generally not available to the public, not even to people who visit the courthouse.  The pleadings in German courts are closed, so knowledge of proceedings from

other plaintiffs, is not sufficient to establish gross negligence in not knowing what other parties did know at any given point in time.

32.     Under German law, it also is not enough that a prosecutor's office has announced an investigation about the same underlying conduct.  *See* Oberlandesgericht Nurnberg, Urteil vom 30.01.2007, 1 U 2691/05.  Dr. Meier's declaration refers to press reports about a criminal investigation into alleged market manipulation by members of Porsche's management board. *See* Meier at ¶ 31. While that investigation was publicly announced in December 2011, the Stuttgart prosecutor did not announce the indictment of Porsche's former CEO and CFO until 19 December 2012.  Thereafter, the Regional Court of Stuttgart refused the prosecutor's request to open a case and dismissed the indictments on the grounds of insufficient evidence.  The Regional Court of Stuttgart only opened a criminal case after that decision was reversed by the Higher Regional Court of Stuttgart on 14 August 2014.

33.     Even in combination, the facts of market speculation, an announced criminal investigation, and the filing of similar claims is generally not sufficient to trigger the statute of limitations under German law.  Notably, the claims of several plaintiffs who filed suit against Porsche in Germany in 2013 were dismissed in early 2014 for not providing specific evidence of the allegedly fraudulent conduct.  *See* Landgericht Stuttgart, Urteil vom 17.03.2014, 28 O 182/13, appeal denied, Oberlandesgericht Stuttgart, Urteil vom 26.03.2015, 2 U 102/14.  Many investors wait before filing lawsuits in Germany, normally much longer than they would in the United States.  It is not uncommon in Germany for investors to await the outcome of a prosecutor's investigation, and to then request access to the prosecutor's file in order to review documents and witness statements that might provide sufficient information to plead a sufficient claim.  Only when sufficient information to assert the claim under Germany's more onerous pleading regime

(Germany does not have notice pleading) with a reasonable prospect of success does the statute of limitations begin to run.  It is common to wait several years before obtaining access to the necessary detailed information until that threshold is met.

34.     At the 8 December 2015 hearing, Judge Kleybolte expressed skepticism that publicly available information could be sufficient to trigger the running of the statute of limitations in a capital markets case.  In particular, Judge Kleybolte stated:  "We regularly have the [statute of limitations] argument with cartel damage claims because press coverage regularly begins with searches conducted by the Federal Cartel Office [*Bundeskartellamt*].  So we have the same hassles every time and we have exhaustive reports in the press in the *Handelsblatt*, the *Frankfurter Allgemeinen* and every time we have… And has it ever been enough? –No."  See Exhibit 2 at p. 4 of 11.

**Porsche's Direct Communications With U.S. Plaintiffs**

35.     In addition to the ex parte filing and the failures to give prior notice of the service of subpoenas, Porsche has also been engaging in other tactics that would violate German rules of fair conduct in litigation.

36.     Under German law, Porsche is not permitted to contact an adverse party that it knows to be represented by counsel.  I understand the law of New York to be similar.  In addition to serving subpoenas without notice to my office, Porsche's United States counsel has also sent letters directly to my firm's clients, without my knowledge or consent.  I have attached as Exhibit 3 hereto an example of one of these letters, which was received by U.S. Plaintiff Shell Pension Trust.

15

**Plaintiffs' Requests For Porsche Documents**

37.     The plaintiffs in the German Action have applied to the Regional Court of
Hanover under §§ 142 and 421 of the German Code of Civil Procedure (Zivilprozessordnung or
ZPO) for an order directing Porsche to produce a number of specific documents that are
identified at <u>Exhibit 4</u> hereto.  These documents are relevant to the plaintiffs' claims because
they are expected to show that in the period prior to 26 October 2008, contrary to its public
statements, Porsche had the intention to acquire control of VW, and also that Porsche's 26
October 2008 announcement was false.  Among the documents sought by plaintiffs is the 23 July
2008 resolution of Porsche's supervisory board, which Porsche has claimed was the first
authorization of the management board to increase the company's holdings of VW to 75% of
shares outstanding (the "23 July 2008 Resolution").  The 23 July 2008 Resolution is referred to
in Dr. Meier's declaration.  *See* Meier Decl. at ¶ 23.  The Regional Court of Hanover has not yet
ruled on plaintiffs' evidence requests.  Porsche has not provided the plaintiffs with copies of any
of the requested documents.

38.     I note that in *ARFB Anlegerschutz UG v. Porsche Automobil Holding S.E.*,
Docket No. 18 O 96/15l and *ARFB Anlegerschutz UG v. Porsche Automobil Holding S.E. and
Volkswagen AG*, Docket No. 18 O 89/15, in which TISAB now represents the plaintiffs, on 13
February 2014, the Regional Court of Braunschweig, before which the cases were then pending,
requested that Porsche provide the court with some documents including the 23 July 2008
Resolution.  On 12 April 2014 and 22 April 2014, Porsche declined to do so.  The ARFB cases
have since been transferred to the Regional Court of Hanover and, like the German Action, are
awaiting the KapMuG determination.

39.   In *Elliot Associates v. Porsche Automobil Holding SE*, Docket No. 5 0 552/12,
another lawsuit by VW investors that is now pending in the Regional Court of Hanover, Porsche
declined to respond to questions posed by the originally invoked Regional Court of
Braunschweig on 9 September 2012 concerning: (1) when Porsche's supervisory board was
invited to attend the 23 July 2008 meeting, and with what agenda; (2) how the 26 October 2008
press release came about, who was responsible for its content, and why were Porsche's VW
stock and options holdings described as they were; and (3) how many put options Porsche sold
prior to 26 October 2008.

40.   I declare under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct.

Executed in Kirchentellinsfurt, Germany on 22 January 2016.

Andreas W. Tilp