**Exhibit 4**

**Documents Requested By U.S. Plaintiffs in the German Action**

1.      Minutes of the conference of the Shareholders' Committee of Porsche from 15 July 2005, in which the "> 80% approach" has been unanimously advocated as a recommendation for action (referred to on page 21 of the complaint (the "Klage") filed by the U.S. Plaintiffs in the German Action).

2.      The PowerPoint Presentation (PPP) called "indicative timetable" that was made to be introduced at the aforementioned conference (15 July 2005, *see* Request 1 above).   Besides an appropriate implementation, this PPP also included a "communications strategy vis-a-vis public" from as early as July to December (Klage p.21).

3.      Note of the CFO Härter, dated 30 November 2006, where Härter explains in words or substance: Even if "we have secured the prices," it would be unclear whether the proof of financing would succeed.  Because one would "turn certainly the largest wheel in the history of the company" and "certainly also an important one in German industrial history," nothing had to go wrong here (Klage p . 22).

4.      Support Letter from Merrill Lynch, dated 12 December 2007, in which Merrill Lynch or a financial institution affiliated with it assumed an initial financing requirement of between EUR 15 billion and EUR 27 billion for further stake building of up to 79.9 % of VW shares. (Klage p. 24).

5.      Minutes of the strategy leader of Porsche regarding several telephone calls and personal talks with employees of the Lower Saxony State Chancellery in February 2008, in which representatives of Porsche demanded from the State of Lower Saxony that despite the fact that the State of Lower Saxony is a "blocking minority holder," the State of Lower Saxony promises to Porsche that (even in case the "VW statute" continues to be valid)  a controlling and profit loss transfer agreement is feasible  (Klage p.24).

6.      Presentation of the benefits of a 75% majority in comparison to a mere 50% majority in a workshop of the project group at 21-22 February 2008 ("Pfinztalrunde", so-called "Pfinztal circle/about.") (Klage p.29).

7.      Presentation of the same content as described in Request 6 for the Supervisory Board meeting of Porsche on 3 March 2008 (Klage p.29).

8.     Minutes of the meeting of the supervisory board of Porsche, held on 3 March 2008, where CFO Härter pointed not only the particular importance of the participation threshold of "> 75/80%".  Moreover, the Supervisory Board member L. shall have pointed out that "at the end of the takeover process a de facto integration of VW" would be the result, so that one could  work diligently regarding the "substantive tasks" (Klage p.32).

9.     Decision of the Supervisory Board from 23 July 2008, which authorized the Management Board to extend the Porsche's shareholding of VW to 75%. (Klage p.34).

10.    Minutes of the meeting of the Supervisory Board of Porsche, held on 23 July 2008 (Klage p.60).

11.    Agenda and board packages of the Supervisory Board meeting held on 23 July 2008 referenced above in Request 10.

12.    The following documents requested by the Regional Court of Braunschweig in proceedings parallel or related to the German Action:

       (a) Opinion of the German Federal Financial Supervisory Authority (BaFin).

       (b) Financial Statements or statements of account of Porsche reflecting its sold put options positions relating to VW stock on 26 October 2008.

       (c) Pleading regarding the chronology of the antitrust and regulatory approvals.

       (d) Pleading regarding the emergence (and drafting) of the press release of 26 October 2008.