## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re Ex Parte Application of Porsche Automobil Holding SE For an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings. | Case No. 1:15-mc-00417-P1 |

## MEMORANDUM IN SUPPORT OF PORSCHE AUTOMOBIL HOLDING SE'S CROSS-MOTION TO COMPEL DISCOVERY AND IN OPPOSITION TO RESPONDENTS' MOTION TO VACATE OR QUASH

Robert J. Giuffra, Jr. (RG9969)
Suhana S. Han
John L. Warden
George R. Painter IV
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000
giuffrar@sullcrom.com

*Counsel for Petitioner Porsche Automobil Holding SE*

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT ............................................................................1

FACTUAL BACKGROUND ...............................................................................4

    A.    The German Action................................................................................4

    B.    The § 1782 Proceedings ........................................................................6

LEGAL STANDARD .........................................................................................7

ARGUMENT .....................................................................................................9

I.      IN GRANTING PSE'S § 1782 APPLICATION, THIS COURT
       CORRECTLY FOUND THAT THE *INTEL* FACTORS WEIGH IN FAVOR
       OF DISCOVERY ........................................................................................9

    A.    The Discovery Sought Is Not Accessible Without Aid Under § 1782. ..................9

    B.    The Requested Discovery Would Aid the German Court in Resolving
        PSE's Pending Statute-of-Limitations Defense. ....................................13

    C.    PSE's Application Is Not an Attempt to Circumvent Proof-Gathering
        Restrictions............................................................................................17

    D.    PSE's Limited Discovery Requests Are Not Invasive or Unduly
        Burdensome, But Rather Target Information Highly Relevant to Its
        Statute-of-Limitations Defense. ...........................................................19

II.    THIS COURT'S § 1782 ORDER SHOULD NOT BE MODIFIED TO
      ALLOW GERMAN PLAINTIFFS TO TAKE MERITS DISCOVERY ..................23

III.   RESPONDENTS SHOULD BE COMPELLED TO PROVIDE THE
      LIMITED, HIGHLY RELEVANT DISCOVERY REQUESTED IN THE
      SUBPOENAS ISSUED PURSUANT TO THIS COURT'S § 1782 ORDER.............25

CONCLUSION ...............................................................................................27

# TABLE OF AUTHORITIES

*Page(s)*

## CASES

*Bethpage Water Dist.* v. *Northrop Gumman Corp.*,
  2014 WL 6883529 (E.D.N.Y. Dec. 3, 2014) ...................................................................24

*Brown* v. *Hendler*,
  2011 WL 321139 (S.D.N.Y. Jan. 31, 2011) ...................................................................26

*Chevron Corp.* v. *E-Tech Int'l*,
  2010 WL 3584520 (S.D. Cal. Sept. 10, 2010) ...............................................................13

*Chevron Corp.* v. *Shefftz*,
  754 F. Supp. 2d 254 (D. Mass. 2010) ...........................................................................22

*Edelman* v. *Taittinger*,
  295 F.3d 171 (2d Cir. 2001)...........................................................................................8

*Euromepa S.A.* v. *R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995)....................................................................................*passim*

*Heraeus Kulzer, GmbH* v. *Biomet, Inc.*,
  633 F.3d 591 (7th Cir. 2011) ...............................................................................13, 18

*Heraeus Kulzer GmbH* v. *Esschem, Inc.*,
  390 F. App'x 88 (3d Cir. 2010) .............................................................................8, 12

*In re Apotex, Inc.*,
  2009 WL 618243 (S.D.N.Y. Mar. 9, 2009) ...................................................................20

*In re Auto-Guadeloupe Investissement S.A.*,
  2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012) ...............................................2, 11, 20, 24

*In re Chevron Corp.*,
  709 F. Supp. 2d 283 (S.D.N.Y. 2010)....................................................................*passim*

*In re Clerici*,
  481 F.3d 1324 (11th Cir. 2007) ...................................................................................10

*In re Eli Lilly & Co.*,
  2010 WL 2509133 (D. Conn. June 15, 2010) ...............................................................26

*In re Gemeinschaftspraxis Dr. Med. Schottdorf*,
  2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) .....................................................8, 9, 18, 19

*In re Gorsoan Ltd.*,
    2014 WL 7232262 (S.D.N.Y. Dec. 10, 2014) ........................................................11

*In re Kreke Immobilien KG*,
    2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ..........................................10, 18, 19

*In re Macquarie Bank Ltd.*,
    2014 WL 7706908 (D. Nev. June 4, 2014) .............................................................9

*In re Microsoft Corp.*,
    428 F. Supp. 2d 188 (S.D.N.Y. 2006).................................................................19

*In re MT "Baltic Soul" Produktentankschiff-ahrtsgesellschaft mbH & Co. KG*,
    2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ........................................................20

*In re OOO Promnefstroy*,
    2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ..................................................10, 20

*In re Republic of Ecuador*,
    2011 WL 736868 (N.D. Cal. Feb. 22, 2011) .......................................................23

*In re Servicio Pan Americano de Proteccion*,
    354 F. Supp. 2d 269 (S.D.N.Y. 2004)..............................................................2, 12

*In re Veiga*,
    746 F. Supp. 2d 8 (D.D.C. 2010) ......................................................................13

*Intel Corp.* v. *Advanced Micro Devices, Inc.*,
    524 U.S. 241 (2004).................................................................................*passim*

*Mees* v. *Buiter*,
    793 F.2d 291 (2d Cir. 2015).....................................................................*passim*

*Minatec Fin. S.A.R.L.* v. *SI Grp. Inc.*,
    2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ..................................... 17, 19-20, 24

*Schmitz* v. *Bernstein Liebhard & Lifshitz, LLP*,
    376 F.3d 79 (2d Cir. 2004)...............................................................................10

*State Farm Mut. Auto. Ins. Co.* v. *Fayda*,
    2015 WL 7871037 (S.D.N.Y. Dec. 3, 2015) .......................................................25

*U.S.* v. *Novartis Pharm. Co.*,
    2014 WL 6655703, at *1, *3 (S.D.N.Y. Nov. 24, 2014) ......................................25

STATUTE

28 U.S.C. § 1782 .....................................................................................*passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ..............................................................................................19, 21, 25

Fed. R. Civ. P. 31 ....................................................................................................22

Fed. R. Civ. P. 37 ....................................................................................................25

## PRELIMINARY STATEMENT

On December 29, 2015, this Court granted the application of Porsche Automobil Holding SE ("PSE") for discovery pursuant to 28 U.S.C. § 1782 for use in German civil proceedings brought against PSE in March 2015 by a group of hedge funds and other investment funds ("German Plaintiffs"), who allege that PSE manipulated the market in Volkswagen AG ("VW") ordinary shares in 2008 (the "German Action"). The Court's December 29 order authorized PSE to serve the investment managers and general partners ("Respondents")[1] of certain hedge funds involved in the German Action with document and deposition subpoenas seeking evidence urgently needed to establish that the hedge funds' claims—which were brought over *six years* after the relevant events and over *five years* after the first lawsuits based on those events were filed—are untimely under the applicable German three-year statute of limitations.

Respondents do not dispute that PSE has satisfied the statutory requirements for § 1782 discovery. Nor do they dispute that, if successful, PSE's statute-of-limitations defense would dispose of the German Plaintiffs' claims—thereby saving significant time and resources of the parties and the German court. Instead, to avoid discovery that presumably will show that the German Plaintiffs sat on their hands for years after the events giving rise to their claims, Respondents accuse PSE of misrepresenting the nature of the German Action, the urgency of PSE's discovery requests, the scope of discovery sought, and the need for U.S. discovery assistance in a futile effort to argue that PSE has failed to satisfy the discretionary § 1782 factors

---

[1]      Respondents are Marble Arch Investments, LP; Marble Arch Investments GP, LLC; Firefly Value Partners, L.P.; FVP GP, LLC; Tremblant Capital LP; Tremblant-Trident Capital LP; Tremblant Holdings LLC; and Tremblant-Trident Holdings LLC.

set forth in *Intel Corporation* v. *Advanced Micro Devices, Inc.*, 542 U.S. 241, 124 S. Ct. 2466 (2004).[2]

This Court should reject each of Respondents' baseless assertions and enforce its § 1782 discovery order.

*First*, even assuming that all Respondents were parties to the German proceedings, courts in this District have routinely granted party discovery under § 1782.  *See*, *e.g.*, *In re Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *5 (S.D.N.Y. Oct. 10, 2012); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004). Here, German procedure does not provide a mechanism for PSE to obtain the requested discovery in Germany, and the information that PSE seeks is peculiarly within Respondents' knowledge and control and is necessary to PSE's statute-of-limitations defense.

*Second*, Respondents concede that German courts are generally receptive to the offer of evidence obtained under § 1782.  (Resps.' Mem. at 15.)  Such discovery would aid the German court in ruling on PSE's statute-of-limitations defense, which is ripe for determination in the German Action.  If decided in PSE's favor, this defense would moot an application under the German "Model Case Act"—which allows a German Higher Regional Court to decide factual and legal issues common to multiple actions—as to the German Plaintiffs related to Respondents.

*Third*, although PSE has not previously sought the requested discovery in Germany, this does not indicate that PSE is seeking to "circumvent foreign proof-gathering restrictions or other policies," *Intel*, 542 U.S. at 264-65, 124 S. Ct. at 2483, because the Second

---

[2]   (*See*, *e.g.*, Resps.' Mem. at 1 ("false pretenses"), 3 ("misleading record"), 5 ("replete with inaccuracies"), 12-13 ("false"), 15 ("disingenuous"), 16 ("extremely misleading"), 18 ("misleading"), 21 ("misprepents").)

Circuit has specifically rejected the notion that PSE must first have directed its request at the foreign tribunal, *see Mees* v. *Buiter*, 793 F.3d 291, 303 (2d Cir. 2015) (no requirement that petitioner "first tried and failed to obtain discovery" in the foreign courts); *Euromepa S.A.* v. *R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) (same).

       *Fourth*, the documents and testimony sought by PSE are far from "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65, 124 S. Ct. at 2483.  PSE seeks documents and testimony only on the very narrow factual issue of when those managing the German Plaintiffs became aware that they had possible claims against PSE arising from its disclosures regarding PSE's position in VW securities.  It is inconceivable that the volume of responsive documents is large or the length of deposition questioning will be long.

       Tellingly, Respondents have not disputed in the German Action that they were aware of any potential claims no later than December 31, 2011.  Instead, they have taken the position that they could not have been aware because PSE denies the merits of those claims; and Respondents have maintained that position, even though other parties—public and private—have been asserting such claims for years and the financial media, which Respondents have a fiduciary duty to monitor, has reported on those assertions regularly.

       Respondents' Motion To Vacate and For Other Relief is merely a continuation of their gamesmanship of requiring PSE to expend significant time and resources litigating claims that should not have been brought in the first place.  Because PSE seeks limited and highly relevant documents and testimony critical to its statute-of-limitations defense in the German Action, Respondents should be compelled to comply with the document and deposition subpoenas PSE served pursuant to this Court's December 29 order.

## FACTUAL BACKGROUND[3]

### A.    The German Action

On March 2, 2015, the German Plaintiffs initiated proceedings against PSE by filing a statement of claims in the German Regional Court of Braunschweig.  (Dkt. No. 2 at 6.)[4] Like plaintiffs in numerous other actions filed around the world as early *as January 2010*, German Plaintiffs alleged that PSE issued false statements and manipulated the market in 2008 in connection with its investment in VW.  (*Id.* at 7.)  German Plaintiffs alleged that, beginning in March 2008, PSE falsely denied an intention to take over VW while secretly planning to amass the requisite 75% stake in VW ordinary shares through a complex options strategy.  (*Id.*) German Plaintiffs further alleged that, when PSE revealed in October 2008 that it planned to attempt the takeover, that statement, too, was false, as PSE no longer had the financial capability to purchase the necessary shares.  (*Id.*)

On July 31, 2015, PSE filed its statement of defense, asserting, among other things, that German Plaintiffs' claims were barred under the three-year statute of limitations.  (*Id.* at 7-8.)  In support of its statute-of-limitations defense, PSE submitted a plethora of publicly available news articles discussing (i) allegations that PSE manipulated the market in VW ordinary shares, and (ii) various investigations and lawsuits initiated against PSE and related individuals on the basis of those allegations.  (*Id.* at 8.)  PSE asserted that, based on the voluminous public record, German Plaintiffs should have been aware of their claims by no later than December 31, 2011, rendering the German Action, initiated in March 2015, untimely under the applicable three-year limitations period.  (*Id.*)

---

[3]    A more comprehensive recounting of the relevant factual background is set forth in PSE's Memorandum of Law in Support of Ex Parte Application for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings (Dkt. No. 2).

[4]    The case was transferred to the Hanover Court, where it remains.  (*Id.*)

On November 24, 2015, German Plaintiffs filed a written submission responding to PSE's statement of defense.  In addition to responding to PSE's statute-of-limitations defense, German Plaintiffs supplemented their  "model case" application initially included in their March 2015 submission pursuant to the German Capital Markets Model Case Act, seeking to invoke a procedure that allows a Higher Regional Court to decide factual and legal issues common to multiple actions.  (Meier Suppl. Decl. ¶ 5.)[5]  If granted, the application would result in the German Action and other similar actions being stayed while the Higher Regional Court resolves the common issues.  (Meier Suppl. Decl. ¶ 5.)

During a December 8, 2015 hearing, the Regional Court of Hanover (the "Hanover Court") suggested that PSE may not be able to establish its statute-of-limitations defense in the German Action based solely on publicly available news articles concerning the allegations and lawsuits against PSE.  (Meier Suppl. Decl. ¶ 8.)  The court indicated that, to establish a defense based on the public record, PSE would have to describe with specificity where and when relevant individuals at German Plaintiffs read or otherwise became aware of such information and were alerted of the circumstances giving rise to their potential claims. (Dkt. No. 2 at 8; Meier Suppl. Decl. ¶ 10.)

In addition to addressing PSE's statute-of-limitations defense, the Hanover Court stated at the December 8 hearing that it expected to rule on German Plaintiffs' model case application at a hearing on April 13, 2016.  (Meier Suppl. Decl. ¶ 11.)  The Hanover Court further indicated that it was inclined to grant the application.  (Meier Suppl. Decl. ¶ 11.)

---

[5]      References to Giuffra Suppl. Decl. Ex. __ are to the Supplemental Declaration of Robert J. Giuffra, Jr., dated January 25, 2016.  Exhibit A to the Giuffra Supplemental Declaration is the Supplemental Declaration of Dr. Markus Meier, dated January 25, 2016.  References to Meier Suppl. Decl. ¶ __ are to Dr. Meier's Supplemental Declaration.

At the parties' request, the Hanover Court authorized further submissions on PSE's statute-of-limitations defense and German Plaintiffs' "model case" application prior to the April 13 hearing.  (Meier Suppl. Decl. ¶ 12.)  PSE's submission is due on March 15, 2016. (Meier Suppl. Decl. ¶ 12.)

Although the Hanover Court may grant the "model case" application at the April 13 hearing, PSE's statute-of-limitations defense could bar the court's grant of this application with respect to the German Plaintiffs related to Respondents.  (Meier Suppl. Decl. ¶¶ 13-15.) The court could rule directly on PSE's statute-of-limitations defense, resulting in outright dismissal of any untimely claims.  (Meier Suppl. Decl. ¶¶ 13-15.)  Indeed, the official minutes from the December 8 hearing indicate that, on April 13, 2016, the Hanover Court will announce a "decision on *remaining matters*."  (Giuffra Suppl. Decl. Ex. B (emphasis added).)

## B.    The § 1782 Proceedings

PSE commenced this proceeding on December 23, 2015 by filing an *ex parte* application for an order granting discovery pursuant to 28 U.S.C. § 1782, seeking leave to serve on each Respondent subpoenas for documents and testimony concerning their knowledge of the circumstances giving rise to the claims in the German Action.  (Dkt. No. 1.)  On December 29, 2015, the Honorable Shira A. Scheindlin, sitting in Part I, granted PSE's application (the "December 29 Order").  (Dkt. No. 4; Giuffra Suppl. Decl. Ex. C.)[6]

---

[6]    On December 23, 2015, PSE filed a similar application in the District of Connecticut for discovery pursuant to § 1782, seeking discovery from Connecticut-based investment managers or general partners of certain German Plaintiffs. *In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, No. 3:15-mc-00183 (VLB) (D. Conn.) (the "Connecticut 1782 Proceeding").  On January 4, 2016, the Honorable Vanessa L. Bryant granted that application.  (3:15-mc-00183, Dkt. No. 10; Giuffra Suppl. Decl. Ex. D.)  Motions to quash or vacate that order are due on February 3, 2016.  (*Id.*)

On December 30 and 31, 2015, PSE served substantively identical document and deposition subpoenas on each of the Respondents pursuant to the Court's order (collectively, the "Subpoenas").   (Dkt. Nos. 5-20.)   The document subpoenas seek information relating to the following four categories:

(1) actual or potential transactions in or holdings of any VW securities by PSE between January 1, 2008 and December 31, 2011;

(2) PSE's financial condition or its ability to transact in or hold VW securities between January 1, 2008 and December 31, 2011;

(3) claims or causes of action that might be asserted against PSE in connection with VW securities; and

(4) any legal proceeding or investigation related to PSE's disclosures or conduct with respect to VW securities (the "Document Requests").

(*See*, *e.g.*, Giuffra Suppl. Ex. F.)

The deposition subpoenas also seek testimony on the same subjects, as well as on the basic corporate structure of each Respondent (the "Topics").   (*See*, *e.g.*, Giuffra Suppl. Ex. E.)   Respondents initially had until January 13 or January 14, 2016 to respond to the Subpoenas, but sought and received an extension until January 22, when Respondents filed a motion to vacate this Court's December 29 order granting PSE's § 1782 application.   The same day, Respondents served responses and objections to the Subpoenas.   In their responses, Respondents refused to provide any of the requested documents and testimony.   (*See* Stone Decl. Ex. 9.)

## LEGAL STANDARD

This Court is "authorized" to grant an application for discovery under § 1782 when, as here, the following statutory factors are met:   "(1) the person from whom discovery is sought resides or is found in the district . . . , (2) the discovery is for use in a proceeding before a

foreign tribunal, and (3) the application is made by . . . 'any interested person.'" *In re Chevron Corp.*, 709 F. Supp. 2d 283, 290 (S.D.N.Y. 2010) (Kaplan, J.).

"Once the statutory factors are met, a district court is free to grant discovery in its discretion." *Id.* In deciding whether to exercise this discretion, this Court should consider the following factors specified by the Supreme Court:

> (1) whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government of the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests.

*Id.* (citing *Intel*, 524 U.S. at 264-65, 124 S. Ct. at 2483). These factors should be considered in light of § 1782's "twin aims" of "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.*

"Congress has expressed as its aim that [§ 1782] be interpreted broadly." *Edelman* v. *Taittinger*, 295 F.3d 171, 180 (2d Cir. 2002). Courts thus employ a "consistently liberal interpretation of [§ 1782] and its objective 'to assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws.'" *Heraeus Kulzer GmbH* v. *Esschem, Inc.,* 390 F. App'x 88, 92 (3d Cir. 2010) (*"Heraeus Kulzer I"*) (quoting *Intel*, 542 U.S. at 262, 124 S. Ct. at 2482). As such, courts "err on the side of permitting the requested [§ 1782] discovery." *In re Gemeinschaftspraxis Dr. Med. Schottdorf*, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (Jones, J.).

## ARGUMENT

**I.    IN GRANTING PSE'S § 1782 APPLICATION, THIS COURT CORRECTLY FOUND THAT THE *INTEL* FACTORS WEIGH IN FAVOR OF DISCOVERY.**

Respondents do not dispute that PSE's application "satisfied [the three] statutory requirements" of § 1782. Instead, they claim that "all four *Intel* discretionary factors weigh strongly against allowing [PSE] to take the requested discovery." (Resps.' Mem. at 7.) But as this Court necessarily concluded in granting PSE's *ex parte* § 1782 application, the *Intel* factors support allowing PSE the limited discovery it seeks, and nothing in Respondents' Motion changes this conclusion. This Court's grant of PSE's request for limited discovery on the German statute-of-limitations issue would serve the statutory aims of § 1782 by providing PSE with an "*efficient means*" of expediently obtaining critical discovery from U.S. entities and by encouraging German courts to provide similar assistance to courts and litigants involved in U.S. proceedings. *Chevron Corp.*, 709 F. Supp. 2d at 290 (emphasis added).

**A.    The Discovery Sought Is Not Accessible Without Aid Under § 1782.**

The first *Intel* factor focuses on whether discovery may be "unobtainable absent § 1782(a) aid." 542 U.S. at 264, 124 S. Ct. at 2483. Accordingly, where discovery is sought from a non-party to the foreign action, courts have found that this factor weighs in favor of granting discovery, given that "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach." *Id.*; *see also Gemeinschaftspraxis*, 2006 WL 3844464, at *5-6. Courts also have concluded that the first factor counsels for discovery against *a party* "[w]here the foreign tribunal's procedural rules may not allow for the discovery sought." *In re Macquarie Bank Ltd.*, 2014 WL 7706908, at *3 (D. Nev. June 4, 2014). Here, PSE seeks discovery—almost exclusively from third parties—that could not be obtained without this Court's assistance.

1.     **The Vast Majority of Respondents Are Not Parties to the German Action.**

Respondents do not dispute that—except for Marble Arch Investments, LP—they are *not* parties to the German Action.  Instead, Respondents claim that they should be considered "participants in the foreign proceeding because of their close relationship to a party."  (Resps.' Mem. at 8-9.)   But Respondents never explain how this "close relationship" means that the German court has the ability to "control the [requested] evidence and order production."  *See In re OOO Promnefstroy*, 2009 WL 3335608, at *5 (S.D.N.Y. Oct. 15, 2009) (Sullivan,  J.).

Notably, Respondents do not claim that their relationship gives the German Plaintiffs possession or control over the documents PSE seeks, such that the Hanover Court could compel German Plaintiffs to produce the documents.  (*See* Meier Suppl. Decl. ¶ 22.)   In fact, under German law, the Hanover Court would treat Respondents like any other third party, regardless of their relationship to German Plaintiffs, meaning that the Hanover Court could not directly compel Respondents, who are located in the United States, to comply with its discovery order.   (*Id.* (noting that a German court would need to make such a request through the Hague Convention).)   *See In re Clerici*, 481 F.3d 1324, 1334-35  (11th Cir. 2007) (first factor weighed in favor of discovery where party to foreign proceeding was physically located outside the foreign country,  and thus,  foreign court could not enforce a discovery order against it).[7]

---

[7]     The cases relied on by Respondents are not on point here.  In *In re Kreke Immobilien KG*, 2013 WL 5966916, at *4-5 (S.D.N.Y. Nov. 8, 2013) (Buchwald, J.), respondent was a German company headquartered in Germany,  and the requested documents could be accessed in Germany; thus, the respondent and the documents were clearly within the jurisdiction of German courts.   By contrast, here neither Respondents nor their documents are located in Germany; all are located in this District.   In *Schmitz* v. *Bernstein Liebhard & Lifshitz, LLP,* 376 F.3d 79, 85 (2d Cir. 2004), respondents were lawyers for the foreign party.   While the relationship between clients and their lawyers is a well-known principal-agent relationship, it is less clear here that the Respondents are agents of the related German Plaintiffs.   Respondents do not provide a factual basis to determine whether Respondents are  in fact agents of any German Plaintiffs, relying

-10-

### 2.   German Procedure Does Not Provide a Mechanism for Obtaining the Requested Discovery.

Even assuming that Respondents were parties to the German Action, the first *Intel* factor nonetheless weighs in favor of granting discovery, as PSE would be unable to obtain the requested discovery in the German court.  *See In re Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *5-6 (S.D.N.Y. Oct. 10, 2012) (Patterson, J.); *see also In re Gorsoan Ltd.*, 2014 WL 7232262, at *6 (S.D.N.Y. Dec. 10, 2014) (Gardephe, J.) ("[I]nvolvement in the [foreign proceeding] is not dispositive as to the first *Intel* factor").

In *Auto-Guadeloupe*, petitioner filed a § 1782 application seeking discovery of documents for use in proceedings in Guadeloupe.  2012 WL 4841945 at *1.  Under the law of Guadeloupe, a party could not obtain discovery of documents unless it "identif[ied] the precise document that [it sought to have] produced."  *Id.* at *5.  In resisting § 1782 discovery, respondent argued that "its status as a party" in the foreign proceedings weighed heavily against discovery. *Id.*  In response, petitioner argued that, because it "[did] not know the precise correspondence or specific documents to request" from respondent, the only real way to obtain such documents would be through § 1782.  *Id.*  In granting § 1782 discovery in part, Judge Patterson stressed that he was "not persuaded that *Intel* precludes § 1782 discovery of parties participating in the underlying international proceeding" and concluded that, "in light of the fact that the materials which [petitioner sought] would be unavailable but for § 1782 assistance, the first *Intel* factor weigh[ed]" in favor of granting discovery.  *Id.* at *5-6.

As in *Auto-Guadeloupe*, German procedures place precisely the same restrictions on document discovery, requiring a party to request "*specific* documents."  *Heraeus Kulzer I.*,

---

instead on conclusory, self-serving statements that certain Firefly and Tremblant entities act as agents for some German Plaintiffs.  (*See* Stone Decl. Ex. 4 at ¶ 3; Stone Decl. Ex. 5 at ¶ 2.)

390 F. App'x at 92.  In the German Action, the court has required PSE to specifically identify where and when an individual or entity read or otherwise became aware of the documents. (Meier Suppl. Decl. ¶ 10.)   PSE cannot specifically identify all relevant documents, and, even with respect to the publicly available documents it can identify, PSE still cannot specify where and when the German Plaintiffs became aware of them.   For example, in order to obtain documents from Respondents about the publicly available news articles, PSE would need to specify who at Respondents received the articles and when those individuals received the articles, which it cannot possibly do at this juncture.   (*Id.*)   Thus, PSE will be unable to obtain document discovery in the German Action.  (*Id.*)  Moreover, German procedures do not allow for pre-trial depositions, and a German court will call a witness to testify in court only if PSE can provide specific details—for example, that the witness received a particular news article and the date on which the witness received the article.  (*Id.* at ¶¶ 10, 19.)  In short, PSE will be unable to obtain its requested discovery absent § 1782 assistance from this Court, and the first *Intel* factor thus supports granting PSE's application here.[8]

The declaration of Professor Gerhard Wagner, submitted in support of PSE's motion to dismiss based on the doctrine of *forum non conveniens* in *Viking Global Equities, LP* v. *Porsche Automobil Holding SE*, No. 650435/2011 (N.Y. Sup. Ct.), does not change the analysis.   Professor Wagner's declaration was submitted for the limited purpose of demonstrating that Germany was an adequate alternative forum in which to adjudicate claims brought against PSE.   (*See* Stone Decl. Ex. 6 at ¶¶ 5,18 (explaining "[a]dequacy of the [p]rocedural [f]ramework").)    Professor Wagner's general statements that fact-gathering

---

[8]    *See also In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) (Marrero, J.) (first factor weighed in favor of discovery from party where foreign court could not order discovery absent "detailed information about the nature and extent of the documentation").

procedures in German courts are not "unduly restrictive" and provide a "full and fair opportunity" for a party to litigate its claims (Resps.' Mem. at 10-11) do not suggest that a German litigant would be able to obtain *all* discovery available in U.S. courts. To the contrary, Professor Wagner's declaration clearly states that "the scope of disclosure under German law is not identical to that provided under U.S. law" (*Id.* at 11), confirming the need for U.S. discovery assistance in certain cases. *See Heraeus Kulzer, GmbH* v. *Biomet, Inc.*, 633 F.3d 591, 596 (7th Cir. 2011) ("*Heraeus Kulzer II*") (granting § 1782 application seeking discovery from *party* to German proceedings because requested discovery was "unobtainable in the German legal system").[9]

## B. The Requested Discovery Would Aid the German Court in Resolving PSE's Pending Statute-of-Limitations Defense.

The second *Intel* factor permits this Court to "take into account the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." 542 U.S. at 264, 124 S. Ct. at 2483. Contrary to Respondents' claim that PSE's characterization of the German proceedings is "extremely misleading" (Resps.' Mem. at 16), it is Respondents who misstate relevant case law and misconstrue the nature of the German Action.

---

[9] Nor can Respondents credibly claim, based on PSE's invocation of *forum non conveniens* in a *separate proceeding* nearly *five years ago*, that PSE somehow is attempting to game the system. In any event, Respondents have cited no authority for the proposition that a party that "has successfully obtained a dismissal from a United States court under the doctrine of *forum non conveniens*[] is precluded from pursuing domestic discovery for use in [a] foreign action [brought by different plaintiffs] under § 1782." *Chevron Corp.* v. *E-Tech Int'l*, 2010 WL 3584520, at *5 (S.D. Cal. Sept. 10, 2010) (allowing § 1782 discovery where petitioner had successfully obtained dismissal on *forum non conveniens* grounds in an earlier U.S. action); *see also In re Veiga*, 746 F. Supp. 2d 8, 25 (D.D.C. 2010); *In re Chevron Corp.*, 709 F. Supp. 2d at 298-99. Similarly, PSE's position with respect to the application of German data privacy laws to discovery in prior U.S. proceedings (Resps.' Mem. at 15) is irrelevant and entirely unrelated to this § 1782 proceeding.

### 1. Respondents Do Not, and Cannot, Dispute That German Courts Are Receptive to Discovery Assistance Under § 1782.

Respondents concede that, "as a general matter, courts in Germany are receptive to evidence obtained pursuant to § 1782," but then argue that this Court should deny discovery because the Hanover Court has "given no indication that it perceives a need for U.S. tribunals to gather evidence on its behalf." (Resps.' Mem. at 15-16). Respondents have it backwards. The Second Circuit has emphasized that a "district court should not condition discovery on an overt expression from the foreign court that it wants or needs the information." *Mees*, 793 F.3d 291 at 303-04. "[O]nly *authoritative proof* that a foreign tribunal [or government] would *reject evidence* obtained with the aid of section 1782" should be considered in assessing the second *Intel* factor. *Euromepa S.A.*, 51 F.3d at 1100. Respondents have provided no proof—much less *authoritative* proof—that the Hanover Court would reject such evidence.[10]

### 2. The Hanover Court Could Dismiss Time-Barred Claims at the April 13 Hearing.

The "character of the proceedings underway abroad" also weighs heavily in favor of granting PSE's § 1782 petition, as PSE has been given an opportunity to supplement its pending statute-of-limitations defense through a submission due on March 15, 2016. As detailed above, PSE asserted its statute-of-limitations defense as part of its July 31, 2015 statement of defense, submitting copious publicly available documents detailing the allegations, investigations and lawsuits against PSE. (*See supra* p. 4.) At the December 8 hearing, the

---

[10]    Although Respondents claim that PSE has "disingenuous[ly] advise[d] this Court that" the Hanover Court "perceives a need for U.S. tribunals to gather evidence on its behalf" (Resps.' Mem. at 15-16), PSE has said no such thing. PSE's argument in its original application (Dkt. No. 2 at 15) and in the instant motion is that there is no authoritative proof that the Hanover Court would reject evidence obtained pursuant to § 1782. Moreover, *as a general matter*, German courts often are receptive to § 1782 discovery obtained through the assistance of U.S. courts. (Meier Suppl. Decl. ¶¶ 21-22.)

Hanover Court indicated that PSE would need to show more—*i.e.*, where and when relevant individuals at German Plaintiffs read or otherwise became aware of such information and were alerted of the circumstances giving rise to their potential claims—and granted PSE the opportunity to submit such evidence by March 15, 2016 for a decision on April 13, 2016. (*Id.* at p. 6.)

Contrary to Respondents' assertions, it is Respondents, not PSE, who mischaracterize the character of these proceedings. Respondents first claim that PSE is "misleading" as to what the Hanover Court will address at the April 13 hearing, and that the court expects to address German Plaintiffs' pending application for model case consolidation— not PSE's statute-of-limitations defense, which "is individual to each plaintiff." (Resps.' Mem. at 16-18.) As an initial matter, the Hanover Court is free to make any ruling it deems appropriate at the April 13 hearing, including dismissal of certain of German Plaintiffs' claims on statute-of-limitations grounds. (Meier Suppl. Decl. ¶¶ 11, 13.) Indeed, during the December Hearing, the Hanover Court set the March 15 deadline for the parties to submit further briefing regarding, among other things, PSE's statute-of-limitations defense, and set the April 13 hearing for an announcement of decision on "remaining matters." (*See supra* pp. 5-6; Meier Suppl. Decl. ¶¶ 12-13; Giuffra Dec. Ex. B, Dec. 8 Official Minutes.)

If the Hanover Court were to decide that some of German Plaintiffs' claims were time-barred, it would dismiss the model case application as to those German Plaintiffs. (Meier Suppl. Decl. ¶ 13.) Additionally, even if the Hanover Court did not issue a final ruling on PSE's statute-of-limitations defense at the April 13 hearing but found that the defense has merit, the court could reject the model case application as to certain German Plaintiffs, because resolution

of their claims is dependent on the "individual issue" of the statute of limitations. (*See supra* pp. 5-6; Meier Suppl. Decl. ¶ 14.)[11]

      Respondents also maintain that the March 15 deadline is not a deadline for PSE's submission regarding its statute-of-limitations defense, but rather, the date by which PSE must respond to German Plaintiffs' November 24 submission regarding PSE's "entire statement of defense." (Resps.' Mem. at 18.) Respondents' argument is self-defeating, as German Plaintiffs' November 24 submission addresses PSE's statute-of-limitations defense. (*See supra* p. 5.)

      Respondents further argue that PSE could establish its statute-of-limitations defense at a later date, including by requesting an extension from the Hanover Court. (Resps.' Mem. at 17-18; Tilp Decl. ¶¶ 24-25.) This argument misses the point. Because the Hanover Court is free to make any decision it deems appropriate at the April 13 hearing, including a decision on the statute-of-limitations defense, the March deadline represents PSE's next real opportunity to dispose of certain of German Plaintiffs' claims *before* they proceed to further litigation on the merits, at great cost to PSE and the German courts. (Meier Suppl. Decl. ¶¶ 16-17.) Finally, Respondents' suggestion that PSE could seek an extension for its submission of evidence would encourage parties to routinely ignore court deadlines on the assumption that the court will grant extensions of those deadlines.[12]

---

[11]    In a futile attempt to minimize the importance of the information being sought in support of PSE's limitations defense, Respondents attempt to fault PSE for not seeking § 1782 discovery from more entities, asserting that this somehow suggests that the need for discovery is "not as 'pressing' as [PSE] claims." (Resps.' Mem. at 12.) As an initial matter, certain of these entities are located outside the country and are therefore outside the reach of § 1782. Moreover, PSE cannot be faulted for pursuing discovery from Respondents for whom the related German Plaintiffs' total alleged damages claim is among the highest.

[12]    Respondents claim that it is "demonstrably false" that PSE's need for critical additional discovery regarding its statute-of-limitations defense was made clear during the December 8 hearing. (Resps.' Mem. at 12-13, 18.) Respondents' argument appears to be that, because a party can prove a statute-of-limitations defense under German law by showing either (i) actual

Because Respondents have provided no proof that the Hanover Court would be unreceptive to the discovery PSE seeks, as is their burden, and rely instead on a mischaracterization of the status of the German Action, the second *Intel* factor favors discovery.[13]

### C. PSE's Application Is Not an Attempt to Circumvent Proof-Gathering Restrictions.

The third *Intel* factor examines "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." 524 U.S. at 264-65, 124 S. Ct. at 2483. At bottom, this factor focuses on whether the requesting party is "pursuing . . . discovery in bad faith." *Minatec Fin. S.A.R.L.* v. *SI Grp. Inc.*, 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008). Because PSE is not pursuing discovery in bad faith, but rather as part of a good-faith effort to supplement its prior submissions to the Hanover Court, this factor favors this Court's granting the requested discovery.

---

knowledge *or* (ii) knowledge but for gross negligence, PSE does not need actual evidence that Respondents knew of particular articles. This argument is belied by the record. At the December 8 hearing, Judge Kleybolte stated that, in order to use publicly available articles to support its statute-of-limitations defense, PSE could not merely name specific publicly available articles and list the information contained within—it also had to describe with specificity where and when particular entities read or otherwise became aware of such information. (Meier Suppl. Decl. ¶ 10; *see also* Tilp Decl. ¶ 34 (quoting Judge Kleybolte as stating "[W]e have exhaustive reports in the press . . . And has it ever been enough? –No.") PSE cannot specifically identify all relevant documents, and, even with respect to the publicly available documents it can identify, cannot specify where and when German Plaintiffs became aware of them. (*See supra* p. 5.) Accordingly, the discovery PSE seeks is critical to PSE's statute-of-limitations defense.

[13]   According to Respondents, Sullivan & Cromwell LLP violated Rule 4.2(a) of the New York Rules of Professional Conduct by sending letters to certain U.S. entities—not parties to this proceeding—requesting that they retain relevant documents in connection with possible future § 1782 actions. This contention is irrelevant to the matters before the Court and, in any event, is baseless. This Rule applies only when counsel knows that a party is represented in the relevant matter. Here, as the document retention letters make clear, PSE is "contemplating" § 1782 actions in the United States against those U.S. entities, and there was no way for Sullivan & Cromwell to know who would represent each of these entities in such actions were they filed.

Respondents' suggestion that discovery may be denied under the third *Intel* factor because PSE "has made no attempt to obtain discovery in Germany" (Resps.' Mem. at 19) is contrary to clearly established controlling precedent.   As the Second Circuit held in *In re Metallgesellschaft AG*, "a district court may not refuse a request for discovery pursuant to § 1782 because a foreign tribunal has not yet had the opportunity to consider the discovery request." 121 F.3d 77, 79 (2d Cir. 1997); *Mees*, 793 F.3d at 303 (no "quasi-exhaustion" requirement); *Euromepa*, 51 F.3d at 1098 ("lack of exhaustion" an "impermissible factor" in § 1782 analysis). Nor does it matter whether the Hanover Court could deny a discovery request by PSE, as "a district court should not consider the *discoverability* of the evidence in the foreign proceeding . . . in ruling on a section 1782 application."   *Brandi-Dorn* v. *IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012); *see also Heraeus Kulzer II*, 633 F.3d at 597 ("serious legal error[]" for district court to conclude that, "by seeking more discovery than [German] procedures allow[ed], [petitioner] was affronting the German legal system").   Indeed, a request for discovery unavailable through a foreign court "is not an 'impermissible' use of § 1782 because, in some respects, that is *precisely the type of assistance that the statute was designed to afford*." *Gemeinschaftspraxis*, 2006 WL 3844464, at *7 (emphasis added).[14]

---

[14]       Respondents rely heavily on dicta in *Kreke* (an unpublished decision) to argue that the third factor weighs against discovery because PSE is attempting to "avoid a negative ruling by the German court." (Resps.' Mem. at 19-20 (citing *Kreke*, 2013 WL 5966916, at *5).)   In *Kreke*, the Court was concerned that a German petitioner's application was "an attempt to circumvent foreign discovery procedures" because, among other things, (i) the German petitioner was "seeking discovery from a German respondent for use against a German defendant in a German proceeding," (ii) "the locus of th[e] action [was] so clearly in Germany," and (iii) "there [was] no suggestion that any documents sought [were] outside the jurisdictional reach of the German courts."   2013 WL 5966916, at *6.   By contrast here, none of the subpoenaed parties or even German Plaintiffs are German entities, and there is a question as to whether the German courts can order document production against non-party foreign entities.   (*See* Meier Suppl. Decl. ¶ 22.)   Moreover, in relation to its analysis (in dicta) of the third *Intel* factor, *Kreke* purports to hold that failure to seek discovery of material that cannot be obtained in the foreign proceedings

Moreover, that the requested information is not available in Germany or that PSE has not requested this material in Germany is irrelevant insofar as the Second Circuit expressly has recognized that non-U.S. courts that do not want the assistance of U.S. courts are free to enjoin the litigants in cases pending before them from pursuing discovery under § 1782(a).  *See Euromepa*, 51 F.3d at 1101 (stating French court can enjoin petitioner "from pursuing discovery in a manner that violates the judicial policies of France" or "refuse to consider any evidence" gathered through 1782); *see also Gemeinschaftspraxis*, 2006 WL 3844464, at *6 (German "court may simply choose to exclude the discovered material from evidence").

**D.  PSE's Limited Discovery Requests Are Not Invasive or Unduly Burdensome, But Rather Target Information Highly Relevant to Its Statute-of-Limitations Defense.**

Under the fourth *Intel* factor, "unduly intrusive or burdensome requests may be rejected or trimmed."  542 U.S. at 265, 124 S. Ct. at 2483.  "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees*, 793 F.3d at 302.  Accordingly, courts applying these standards routinely grant broad § 1782 discovery.  *See, e.g., In re Chevron Corp.*, 749 F. Supp. 141, 170 (S.D.N.Y. Nov. 4, 2010) (denying motion to quash document subpoena issued pursuant to § 1782 and containing *54 separate requests*); *Minatec Fin. S.A.R.L.*, 2008 WL 3884374, at *8 (permitting

---

is evidence that a petitioner is seeking to circumvent foreign proof gathering restrictions.  *Kreke,* 2013 WL 5966916, at *6 (incorrectly interpreting petitioner's inability to obtain documents through the German court as an unwillingness to "engage in [German court] rules."). But such a conclusion flies in the face of plain Second Circuit law.  *See, e.g., Mees*, 793 F.3d at 303 (no requirement that petitioners must first seek discovery from the foreign tribunal); *Brandi-Dohrn*, 673 F.3d at 82 (a district court should not consider discoverability or admissibility of requested discovery in foreign proceeding).  Moreover, the case on which *Kreke* relies—*In re Microsoft Corp.*, 428 F. Supp. 2d 188 (S.D.N.Y. 2006)—is entirely inapposite and not controlling.  There, the foreign jurisdiction explicitly stated that it believed the subpoenas at issue were "an attempt to circumvent the established rules" of that jurisdiction.  428 F. Supp. 2d at 195.

discovery regarding "any employee who may have particular knowledge" regarding purchase agreement). Here, PSE has taken pains to craft its discovery requests to target materials highly relevant to its statute-of-limitations defense, seeking production of *four* narrow categories of documents and deposition testimony concerning *five* narrow topics. (*See*, *e.g.*, Giuffra Suppl. Decl. Exs. F at 7, E at 6-7.)[15]

Respondents claim that PSE's Document Requests Nos. 1 and 2, which do not "refer to . . . claims or investigations against [PSE] with respect to VW Securities," constitute a "fishing expedition." (Resps.' Mem. at 21-22.) To the contrary, any materials produced in response to these requests—which seek documents in Respondents' possession concerning PSE's investment in VW Securities and financial condition during the period January 1, 2008 to December 31, 2011 (*see*, *e.g.*, Giuffra Suppl. Decl. Ex. F at 7)—would be highly relevant in the German Action. For example, such materials would demonstrate that Respondents, and the German Plaintiffs they manage, had knowledge of the circumstances underlying the claims in the German Action. Moreover, documents responsive to Document Request No. 1 would include internal documents discussing the accuracy of PSE's public statements prior to October 26, 2008 that it did not intend to seek to acquire 75% of VW Shares, and, as a result, such documents

---

[15]   Because PSE's requests are limited in scope, tied to a specific time period, and highly relevant to PSE's statute-of-limitations defense, the cases cited by Respondents—which involve largely unbounded requests—are readily distinguishable. *See In re MT "Baltic Soul" Produktentankschiffahrtsgesellschaft mbH & Co. KG*, 2015 WL 5824505, at *3 (S.D.N.Y. Oct. 6, 2015) (Swain, J.) (denying § 1782 petition where petitioners sought "all documents" regarding "every financial transaction [the targets] have engaged in with 11 different banks" without any limitation on subject matter or timeframe); *Auto-Guadeloupe Investissement S.A.*, 2012 WL 4841945, at *9-10 (quashing certain requests that fell outside relevant time period and did not relate to petitioner's claims); *In re OOO Promnefstroy*, 2009 WL 3335608, at *9 (S.D.N.Y. Oct. 15, 2009) (Sullivan, J.) (fourth *Intel* factor weighed against discovery where requests sought documents from "many" business entities that were not even affiliated with respondent); *In re Apotex, Inc.*, 2009 WL 618243, at *3 (S.D.N.Y. Mar. 9, 2009) (Jones, J.) (quashing discovery that sought "documents that date back nearly thirty years").

could demonstrate Respondents' knowledge that PSE's public statements were allegedly false. Similarly, documents responsive to Document Request No. 2 would include internal documents assessing whether PSE was able to purchase 75% of VW Shares in accordance with its October 26, 2008 press release, and such documents could demonstrate Respondents' knowledge about PSE's alleged lack of ability to purchase such shares.  In both instances, if Respondents possessed such knowledge prior to December 31, 2011, their claims in the German Action would be time-barred under the applicable statute of limitations.

For the same reason, Topics Nos. 2 and 3—which seek testimony on the same issues (*see*, *e.g.*, Giuffra Suppl. Decl. Ex. E at 6)—also are highly relevant.  Moreover, Respondents do not seriously challenge the relevance of the remaining discovery requests, which seek documents and testimony regarding Respondents' awareness of other legal proceedings or investigations against PSE and the existence of Respondents' own legal claims against PSE. (*See* Resps.' Mem. at 21-22; *e.g.*, Giuffra Suppl. Decl. Exs. E at 6-7, F at 7.)

Respondents baselessly claim that PSE's discovery requests, including Topics Nos. 4 and 5, improperly seek "attorney-client privileged communications and work product." (Resps.' Mem. at 22.).  To be clear, PSE does *not* seek to compel production of confidential legal advice or work product; rather, PSE seeks only non-privileged materials and information concerning when and under what circumstances Respondents and German Plaintiffs became aware of their potential claims arising from PSE's investment in VW.  To the extent that Respondents believe there is a basis to withhold certain responsive documents on privilege grounds, they must furnish a privilege log providing the bases for their privilege claims and identifying the materials withheld or redacted.  *See* Fed. R. Civ. P. 26(b)(5).  *See also id.* at

30(c)(2) (permitting objections to specific deposition questions that the objector believes seek privileged testimony).[16]

Finally, Respondents' assertion that PSE has requested eleven total depositions, "which exceeds the presumptive limit of ten under Fed. R. Civ. P. 31(a)(2)(A)," rests on the erroneous inclusion of three depositions sought in the Connecticut 1782 Proceeding. *See Chevron Corp.* v. *Shefftz*, 754 F. Supp. 2d 254, 265 (D. Mass. 2010) ("Respondent and plaintiffs provide no authority for the proposition that multiple § 1782 proceedings in disparate jurisdictions should be treated as a single case for the purpose of [Rule 30's limit on number of depositions]."). In any event, although PSE served deposition subpoenas on each Respondent in accordance with this Court's December 29 Order, PSE is willing to reduce the number of depositions if a single representative is able to testify on behalf of multiple Respondents (*e.g.*, if one individual can testify on behalf of all Tremblant entities, PSE would only seek to depose that individual once).[17]

---

[16]     Although PSE's discovery requests are not unduly burdensome, to the extent this Court finds otherwise, it should narrow, rather than deny, the requests. As Respondents concede (*see* Resps.' Mem. at 20), the Second Circuit has expressly "instructed that 'it is far preferable for a district court to . . . issu[e] a closely tailored discovery order rather than [to] simply deny[] relief out-right.'" *Mees*, 793 F.3d at 302. But the Court should not "limit the scope of the authorized discovery to document subpoenas concerning specific public information identified by Porsche and obtained by Movants prior to January 1, 2012" (Resps.' Mem. at 24), as PSE's statute-of-limitations defense can be demonstrated through means other than Respondents' awareness of public information. For example, internal discussions at Respondents evidencing awareness of the circumstances supporting their claims against PSE would also support the defense, and German courts are receptive to that type of evidence. (Meier Suppl. Decl. ¶ 19.) As such, this Court should not limit the discovery sought to merely documents and testimony regarding public information.

[17]     Based on the declarations submitted as exhibits to the Declaration of Ralph Stone, it appears that a single 30(b)(6) deponent will be sufficient for each family of funds. (*See* Stone Decl. Exs. 3-5.)

## II.   THIS COURT'S § 1782 ORDER SHOULD NOT BE MODIFIED TO ALLOW GERMAN PLAINTIFFS TO TAKE MERITS DISCOVERY.

As an alternative to vacating the § 1782 order, Respondents ask the Court to modify the December 29 order to condition discovery on PSE's agreement to produce documents that German Plaintiffs have requested in the German Action.  (Resps.' Mem. at 23-24.)  The Court should deny this bald attempt to obtain discovery on the merits of German Plaintiffs' time-barred claims under the guise of "reciprocal" discovery.

As an initial matter, Respondents incorrectly suggest that PSE is inappropriately withholding documents in the German Action.  (*See* Resps.' Mem. at 23-24.)  As Respondents admit, the Hanover Court has not yet ruled on the pending request for documents.  (*See* Tilp Decl. ¶ 37.)  Moreover, PSE already has provided German Plaintiffs with information concerning the contents of certain of the requested documents.  (Meier Suppl. Decl. ¶ 25.)[18]

More fundamentally, Respondents hardly seek "reciprocal" discovery.  PSE seeks information on the timeliness of German Plaintiffs' claims.  Respondents, by contrast, request "reciprocal" discovery into "the merits of [German Plaintiffs'] claims."  (Resps.' Mem. at 23.)  But courts have made clear that a respondent should not be permitted "reciprocal" discovery that is "far afield" of the petitioner's initial requests.  *See In re Republic of Ecuador*, 2011 WL 736868, at *10 (N.D. Cal. Feb. 22, 2011); *see also Euromepa S.A.*, 51 F.3d at 1102 (reciprocal discovery should allow "access to *analogous* . . . documents or testimony" (emphasis added)).[19]

---

[18]   In multiple proceedings before the Regional Court of Braunschweig, PSE briefed the Court and the other parties on the facts of the July 23, 2008 resolution that were considered relevant by that court.  (Meier Dec. ¶¶ 23-24.)

[19]   This is particularly true when, as here, Respondents have identified no documents or entities from whom they seek discovery that are within this district and have thus 'fail[ed] the crucible of § 1782."  *In re Republic of Ecuador*, 2011 WL 736868, at *10 (rejecting respondent's "attempt to shoehorn wide ranging discovery . . . under the guise of 'reciprocal discovery'").  Arguably, reciprocal discovery should even be denied on the sole ground that the requested

PSE already has provided German Plaintiffs with all documents in its possession concerning the timeliness of their claims—namely, a "comprehensive set" of news articles and other documents indicating that German Plaintiffs knew or should have known of their claims against PSE by December 31, 2011(Dkt. No. 3-29 ¶ 25)—eliminating any need to "lend parity to the disclosure mix" on the subject of PSE's requests. *Minatec Fin. S.A.R.L.*, 2008 WL 3884374, at *9.

Moreover, allowing Respondents so-called "reciprocal" discovery on the merits would conflict with the goals of equity and efficiency underlying § 1782, as it would force PSE to incur the burden and expense of litigating untimely claims. *See Brandi-Dohrn*, 673 F.3d at 80 ("'[D]istrict courts must exercise their discretion under § 1782 . . . [to] provid[e] *efficient means of assistance* to participants in international litigation.'" (emphasis added)). The purpose of a statute of limitations is to prevent the litigation of claims brought too late, and establishing that German Plaintiffs' claims are time-barred would permit the Hanover Court to avoid unnecessary consideration of the merits of those claims. (Meier Suppl. Decl. ¶ 14.) Granting discovery into the merits of the claims at this juncture threatens to impose huge costs on the parties for no reason, particularly where the public record strongly suggests that German Plaintiffs were aware of their claims long ago. As a result, Respondents' request for merits discovery should be denied. *Cf. Bethpage Water Dist.* v. *Northrop Gumman Corp.*, 2014 WL 6883529, at *2, *4 (E.D.N.Y. Dec. 3, 2014) (staying all discovery except that relating to timeliness of plaintiff's claims, because defendants' statute-of-limitations defense "raised[d] a substantial issue . . . as to the viability of plaintiff's claims and is potentially dispositive of the entire action").

---

documents are located outside the District. *E.g.*, *Auto-Guadeloupe*, 2012 WL 4841945, at *11 (denying reciprocal discovery when requesting party "failed to identify any documents or witnesses that are within this Court's jurisdiction").

### III.   RESPONDENTS SHOULD BE COMPELLED TO PROVIDE THE LIMITED, HIGHLY RELEVANT DISCOVERY REQUESTED IN THE SUBPOENAS ISSUED PURSUANT TO THIS COURT'S § 1782 ORDER.

Under Rule 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  "Relevance is . . . to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  *State Farm Mut. Auto. Ins. Co.* v. *Fayda*, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (Francis, M.J.) (citation omitted).

If a subpoenaed entity refuses to produce documents or testimony, the party issuing the subpoena may move to compel compliance with the discovery requests.  Fed. R. Civ. P. 37(a)(3)(B).  The moving party bears "[t]he burden of demonstrating relevance."  *U.S.* v. *Novartis Pharm. Co.*, 2014 WL 6655703, at *1, *3 (S.D.N.Y. Nov. 24, 2014) (Francis, M.J.). Once relevance is established, "the part[ies] resisting discovery," *i.e.*, Respondents, "ha[ve] the burden of showing undue burden or expense."  *Fayda*, 2015 WL 7871037, at *2.

As described above, PSE seeks highly relevant discovery that is proportional to the needs of the case, and Respondents have failed to show that the requested discovery would impose undue burden or expense.  Despite this, in their responses and objections to the Subpoenas, Respondents have refused to provide *any* documents or testimony.  (*See* Stone Decl. Ex. 9.)[20]  Accordingly, this Court should compel Respondents to comply with the Subpoenas.

---

[20]     In the response and objection to Deposition Topic No. 1, Respondents stated that "they have submitted declarations in connection with the motion to vacate the Section 1782 Order which may obviate any claimed need for a witness on this subject."  (Stone Decl. Ex. 9 at 6.) These short, conclusory declarations, which largely repeat the information in PSE's Application Memo—such as the fact that Respondents are general managers or investment managers of German Plaintiffs (other than Marble Arch Investments, LP, which is itself a German Plaintiff) with their principal places of business in New York—are not substitutes for deposition testimony about the corporate structure of Respondents.  For example, PSE seeks information about the

*See, e.g., In re Eli Lilly & Co.*, 2010 WL 2509133 (D. Conn. June 15, 2010) (granting motion to compel document production and deposition testimony pursuant to § 1782).   In light of PSE's critical need for discovery in support of the statue-of-limitations briefing due March 15, 2016, we respectfully request the Court to order that Respondents comply with the Document Requests on or before February 11, 2016, over six weeks from service of the subpoenas and a full week after the date of oral argument on the instant motion, and provide 30(b)(6) witnesses for the Respondent families on February 17, 18, and 19, respectively.   *Cf. Brown* v. *Hendler*, 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011) (Ellis, J.) (compliance date of fourteen days from service of subpoena is "presumptively reasonable").[21]

---

services Respondents provide for the related German Plaintiffs and what role, if any, Respondents typically play in investment decisions and the assertion of legal claims.   These structural questions are relevant to the question of when the German Plaintiffs became aware of the circumstances underlying their claims against PSE because they would, for example, help demonstrate the flow of information between Respondents and German Plaintiffs.

[21]   In accordance with Local Rule 37.1, the discovery requests PSE seeks to enforce pursuant to its motion to compel are attached as exhibits to the Giuffra Supplemental Declaration.   (*See* Giuffra Suppl. Decl. Exs. E-T.)

**CONCLUSION**

For the foregoing reasons, this Court should deny Respondents' motion to vacate or quash the Subpoenas and grant PSE's motion to compel compliance with the Subpoenas.

Respectfully,

Robert J. Giuffra, Jr. (RG9969)
Suhana S. Han
John L. Warden
George R. Painter IV
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
(212) 558-4000
giuffrar@sullcrom.com

*Counsel for Petitioner Porsche Automobil
Holding SE*

January 25, 2016