UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
In re *Ex Parte* Application of Porsche Automobil Holding
SE for an Order Pursuant to 28 U.S.C. § 1782 Granting                    15-mc-417 (LAK)
Leave to Obtain Discovery for Use in Foreign Proceedings.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

Robert J. Giuffra, Jr.
Suhana S. Han
John L. Warden
George R. Painter IV
SULLIVAN & CROMWELL LLP
*Attorneys for Petitioner*

Ralph M. Stone
Susan M. Vadies
STONE BONNER & ROCCO LLP
*Attorneys for Respondents*

LEWIS A. KAPLAN, *District Judge.*

This is another of the increasingly frequent applications pursuant to Section 1782 of

the Judicial Code[1] by which a litigant in a foreign proceeding seeks to obtain evidence from persons

who are found or reside in the United States for use in the foreign tribunal.

In this case, the applicant is Porsche Automobil Holding SE ("Porsche" or "PSE"),

the well known automobile company.  It has been sued in a number of cases in Germany that claim,

---

[1] 28 U.S.C. § 1782.

generally speaking, that Porsche made misrepresentations and engaged in market manipulation in connection with its 2008 investment in Volkswagen, AG ("VW"), another equally well known auto firm.  What appears to have sparked Porsche's attempt to secure evidence under Section 1782 is the fact that at least some of the German plaintiffs seek to establish a so-called "model case" under the German Capital Markets Model Case Act ("KapMuG") – a mechanism that, if established by the German courts, would designate one or more of the cases against Porsche as a vehicle, a "model case," in which issues of fact and law common to all affected cases would be decided only in the model case, with binding effect on all others.  And the nettle to be grasped here is that Porsche contends in the German litigation that some or all of the cases against it are time barred, in substance because the plaintiffs in those cases or their close affiliates knew or could have known of their claims against Porsche but failed to sue within the period prescribed by German law.

Porsche has advanced that defense in Germany already.  Thus far, the German court has indicated that Porsche, in order to prevail on its untimeliness defense, will "have to name the exact [press] article [known to each plaintiff], list the information [it contained] and . . . also . . . establish that the party in question, whose knowledge counts in the case, had known about this press release or could have taken note of it."[2]  Accordingly, Porsche here seeks evidence relevant to those issues from eight subpoena recipients, all plaintiffs or affiliates of plaintiffs in the German action. It seeks it for use in establishing its untimeliness defense and on the questions of whether any model case should be established and, in any event, whether the cases brought by these particular subpoena recipients (and their affiliates) should be, or be included in, a model case.

---

[2] Certified English translation of stenographic verbatim transcript of oral hearing in Hanover District Court, Dec. 8, 2015 [DI 49-2] [hereinafter "Dec. 8 Tr."], at pdf p.6.

Here, subpoenas issued pursuant to leave granted by the Part I judge under Section 1782 and have been served.[3]  The matter is before the Court on the motion of the subpoenaed parties, and several of their affiliates, to quash the subpoenas[4] and Porsche's cross-motion to compel compliance.[5]

As a general matter, the Supreme Court and the Second Circuit have made clear that district courts are to take a hospitable view of applications to compel the production of evidence by persons found or residing in the United States for use in foreign litigation.  That hospitality derives from Congress's desire to make the United States a helpful world citizen and, moreover, in the hope of obtaining similar receptivity abroad to efforts by litigants in American courts to obtain evidence located in other countries.

In this case, all parties agree that Porsche has satisfied all of the statutory prerequisites to relief under Section 1782.  Whether and to what extent it should be permitted to obtain the requested evidence therefore is committed to the discretion of this Court.  Having considered the exceptionally helpful papers and arguments submitted by both sides, the Court modifies the subpoenas somewhat to reduce any burden that compliance otherwise might impose,

---

[3]

As typically or, at least, frequently is the case in § 1782 proceedings, leave to serve the subpoenas was granted *ex parte*, which is appropriate because all questions with respect to the propriety of the grant of leave and with respect to the content to the subpoenas are available to every subpoenaed party via a motion to quash or the defense of an application to compel compliance with the subpoenas. *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (summary order); *In re Application of Chevron Corp.*, 10-mc-0002 (LAK), DI 2 at 1 (S.D.N.Y. Aug. 6, 2010).

[4]

DI 36.

[5]

DI 40.

4

grants Porsche's cross-motion to compel compliance with the subpoenas as modified, and denies the motion to quash.

*Facts*

*Parties*

In a formal sense, the parties to this proceeding are Porsche, which obtained leave from this Court to serve subpoenas on eight entities, and the eight subpoena recipients ("Subpoena Recipients" or "Recipients").[6]

The Subpoena Recipients all have their principal places of business in the Southern District of New York.[7]  They can be divided into two categories.  The first includes Marble Arch Investments, L.P., an investor in Porsche securities and a plaintiff in the German action, and its general partner, Marble Arch Investments GP, LLC, which is not a plaintiff in the German action. The second category includes the other six Subpoena Recipients, all of which are either general partners or investment managers of institutional investors located outside this district that are plaintiffs in the German action.

---

[6]

    The eight Subpoena Recipients are Firefly Value Partners, L.P., FVP GP, LLC, Marble Arch Investments, LP, Marble Arch Investments GP, LLC, Tremblant Capital LP, Tremblant-Trident Capital LP, Tremblant-Trident Holdings LLC, and Tremblant Holdings LLC.

    The Subpoena Recipients fall into three "families" for purposes of this opinion: (1) Firefly Value Partners, L.P. and FVP GP, LLC are referred to collectively as "Firefly," (2) Marble Arch Investments, LP and Marble Arch Investments GP, LLP are referred to collectively as "Marble Arch," and (3) Tremblant Capital LP, Tremblant-Trident Capital LP, Tremblant-Trident Holdings LLC, and Tremblant Holdings LLC are referred to collectively as "Tremblant."

[7]

    DI 3-1.

In addition to the Subpoena Recipients, the motion to quash is brought also by nine additional entities that are not located within this district.[8]  They all are United States-based plaintiffs in the German action and affiliates of the Subpoena Recipients described above.

For the purposes of this opinion, the entities moving to quash Porsche's subpoenas[9] will be referred to collectively as "Movants."[10]  Further, the ten entities[11] that are moving to quash Porsche's subpoenas and that also are plaintiffs in the German action will be referred to collectively as the "US Plaintiffs."

*The German Action*

Porsche seeks evidence in aid of a proceeding currently pending in the German Regional Court of Hanover and entitled *Effecten-Spiegel, et al. v. Porsche Automobil Holding SE*, Dkt. No. 18 O 175/15 ("*Effecten*").  *Effecten* is one of several German cases pending against Porsche

---

[8]

The additional entities are FVP Master Fund, L.P., FVP US-Q, LP, Tremblant Concentrated Fund LP, Tremblant Concentrated Master Fund LP, Tremblant Partners LP, Tremblant Partners Master Fund LP, Tremblant Super Concentrated Fund Ltd., Tremblant-Trident Partners LP, and Tremblant-Trident Partners Ltd.

These nine entities have standing to move to quash Porsche's subpoenas even though the subpoenas were directed to and served on their affiliates.  *See In re Application of Sarrio, S.A.*, 119 F.3d 143, 147-48 (2d Cir. 1997).

[9]

This includes the eight Subpoena Recipients and the nine additional movants.

[10]

The Court recognizes that Porsche is a cross-movant in this proceeding.  Nonetheless, for the sake of clarity, this opinion refers to only those entities moving to quash as "Movants."  Porsche, as explained above, will be referred to as "Porsche" or "PSE."

[11]

Marble Arch Investments, LP, FVP Master Fund, L.P., FVP US-Q, LP, Tremblant Concentrated Fund LP, Tremblant Concentrated Master Fund LP, Tremblant Partners LP, Tremblant Partners Master Fund LP, Tremblant Super Concentrated Fund Ltd., Tremblant-Trident Partners LP, -and Tremblant-Trident Partners Ltd.

in which investors in the securities of VW seek to recover for losses they claim they suffered due to alleged misrepresentations and market manipulation by Porsche concerning Porsche's investment in VW and related derivatives in 2008.

      *Effecten* was brought by thirty-two large investor plaintiffs (the "German Plaintiffs") in early 2015.[12]  Simultaneous with the filing of *Effecten*, the German Plaintiffs filed a "model case" application under KapMuG[13] which, as explained in greater detail below, permits the adjudication of common questions in the mass securities or investor tort contexts in a "model case," the results of which are binding on parties in related actions.

      On July 31, 2015, Porsche filed a statement of defense in *Effecten* asserting, *inter alia*, that Germany's three-year statute of limitations barred the German Plaintiffs' claims.[14]  Porsche submitted to the German court a large volume of publicly available information, including international news articles concerning governmental investigations into PSE and private lawsuits filed against PSE, in support of its limitations defense.

      On November 24, 2015, the German Plaintiffs filed a response to Porsche's defenses, including its limitations defense, and supplemented their "model case" application.[15]

      The German court held a hearing on December 8, 2015 at which several issues were discussed, including PSE's motion "to dismiss the action" and the German Plaintiffs' application

---

[12]      Decl. of Dr. Markus Meier [DI 3-29] ¶¶ 5, 20.  There is some dispute about whether *Effecten* was commenced in February or March 2015.

[13]      Decl. of Andreas W. Tilp [DI 39] ¶ 10.

[14]      DI 3-29 ¶ 25.

[15]      *See* Supp. Decl. of Dr. Markus Meier [DI 41-1] ¶ 7; DI 42 at 5.

for "model case" treatment.[16]   According to Porsche's German counsel, the *Effecten* court "expressed its view that PSE may not be able to establish a statue-of-limitations defense based solely on the public availability of news articles concerning allegations and lawsuits against PSE.  Rather, the court indicated that PSE would have to demonstrate which specific articles (or other documents) came to German Plaintiffs' attention and alerted them to their potential claims."[17]  Indeed, according to the German Plaintiffs' transcription of the hearing, the German court stated that "if you rely on press reports, you have to name the exact article, list the information and you have to do one more thing, in some form you also have to establish that the party in question, whose knowledge counts in the case, had known about this press release or could have taken note of it.  This has to be presented to us in a plausible way, no more and no less."[18]

The German court concluded the December 8, 2015 hearing by establishing April 13, 2016 as the date "for the announcement of the decision on remaining matters."[19]  It is undisputed that the German Plaintiffs' "model case" application is one the "remaining matters" and that the German court has indicated its intention to rule on that issue on April 13.[20]  PSE argues that its limitations defense – which was discussed but not disposed of definitively during the December 8 hearing – is another "remaining matter[]" and that the German court could rule on it on April 13.

---

[16]     Certified English Translation of Official Minutes of the December 8, 2015 Hr'g [DI 41-2].

[17]     DI 3-29 ¶ 27.

[18]     Dec. 8 Tr. at pdf pp. 6-7.

[19]     DI 41-2.

[20]     DI 41-1 ¶ 11.

The German Plaintiffs are due to make a final submission to the German court on February 29, 2015.  Porsche is due to make its final submission to the German court on March 15, 2016.  According to Porsche's German counsel, its submission may focus (at least in part) on its limitations defense, particularly if Porsche can bolster its argument with evidence – obtained through this Section 1782 proceeding – demonstrating when specific plaintiffs knew or could have known about their potential claims against Porsche.[21]  The German court will issue its decision on "remaining matters" on April 13, 2016.  There may be some flexibility in this schedule, but probably not beyond May 8, 2016.[22]

*The KapMuG Statute*

The KapMuG statute[23] permits German courts in some circumstances to employ a procedure somewhat akin to an American class action to decide questions of law or fact common to many pending cases in a "model case."  Decisions on common questions in a "model case" are binding in subsequent proceedings in related cases.  According to commentators, the statute "contemplates three procedural stages: [1] an application by the parties to use the procedure; [2] the trial of the model case questions; and [3] the application of the model case decision to the other individual cases."[24]

---

[21]

*See* DI 3-29 ¶ 28.

[22]

Tr. of Feb 4, 2016 at 32:6-18.

[23]

An English translation of the KapMuG statute is available at DI 39-1.

[24]

James M. Newland, Louise F. Moher & Lynda Morgan, *Multi-Party Litigation in Germany: The KapMuG in Action*, VOL. VI(4) CLASS ACTION 424, 425 (2008, updated Jan. 10, 2012),

*The KapMuG Application Stage*

In a case that falls within the scope of the KapMuG,[25] any party may apply to the court of first instance for a model case proceeding by demonstrating the existence of common questions (the "establishment objective") and supporting the application with "all factual and legal circumstances which serve to justify the model case."[26]   The non-moving party is "granted opportunity to comment on the matter."[27]   The applicant must demonstrate that resolution of its proposed model questions "may have significance for other similar cases beyond the individual dispute concerned."[28]   The German court must deny the application if, *inter alia*, (1) "[a] decision on the dispute upon which the application for the establishment of a model case is based is not dependent on the claimed establishment objective," or (2) "[t]he significance of the case for other legal disputes is not demonstrated."[29]

If such an application is granted, the court of first instance must publish its determination and the establishment of a KapMuG Complaint Registry in the German Federal

---

http://www.mondaq.com/x/160298/Class+Actions/MultiParty+Litigation+In+Germany+The+KapMuG+In+Action; *accord* Axel Halfmeier & Eberhard Feess, *The German Capital Markets Model Case Act (KapMuG) - A European Role Model for Increasing the Efficeincy of Capital Markets?   Analysis and Suggestions for Reform*, at 9-11 (January 30, 2012), *available at* Social Science Research Network: http://ssrn.com/abstract=1684528.

[25]

*See* KapMuG § 1(1).

[26]

*Id.* § 2.

[27]

*Id.*

[28]

*Id.*

[29]

*Id.* § 3.

Gazette.[30]  If a total of ten or more applications for model case treatment are granted on essentially the same questions within six months of this publication, then the second stage – the determination of common questions – begins.[31]  During this six-month period, the original proceedings are stayed.[32]

Here, the German Plaintiffs have moved for model case treatment under the KapMuG, and PSE has opposed that motion.  The motion is pending before the German court and, as noted, is expected to be resolved on April 13, 2016, and no later than May 8, 2016.

*The Determination of Common Questions*

If the ten-case threshold is met, the court of first instance issues an order referring the common questions to the competent court of appeals for a determination of common questions.[33]  The court of appeals designates the "model case plaintiff from among the plaintiffs whose proceedings have been suspended."[34]  In doing so, the appellate court must consider, *inter alia*, the amounts of different plaintiffs' claims and any "[a]greement among several plaintiffs designating

---

[30]

     *Id.*

[31]

     *Id.* §§ 3, 6.

[32]

     *Id.* § 8.

[33]

     *Id.* § 6.  The appellate court later may expand the scope of the model case proceeding to include additional, relevant common questions.  *Id.* § 15.

[34]

     *Id.* § 9.

a single model case plaintiff."[35]  The non-model case plaintiffs "are joined to the proceedings as third-party petitioners who can validly undertake procedural steps as long as they are not inconsistent with the lead plaintiff's declarations and litigation acts (§ 14 KapMuG 2012) and who will be bound by the model case decision (§ 22 para. 1 KapMuG 2012)."[36]  After the model case plaintiff is selected, the appellate court determines the common questions and issues a "model case ruling" that is binding on all parties in cases suspended under Section 8 of the KapMuG statute.[37]

*Application of the Model Case Ruling*

After the model case ruling is issued, the individual cases – which are stayed during the second stage – are resumed in the courts of first instance.  The courts of first instance must apply the model case ruling to each individual case and adjudicate all remaining individual issues.[38]  Commentators agree that, in normal circumstances, several substantial individual issues remain to be adjudicated after a model case ruling, including questions of reliance, causation, and, according to at least one commentator, limitations.[39]

---

[35]

*Id.*

[36]

Brigitte Haar, *Investor Protection Through Model Case Procedures - Implementing Collective Goals and Individual Rights Under the 2012 Amendment to the German Capital Markets Model Case Act (KapMuG)*, 15(1) EUR. BUS. ORG. L.R., 83, 100 (2014).

[37]

KapMuG §§ 16, 22.  The model case ruling is appealable to Germany's highest court.  *Id.* § 20.

[38]

*Id.* § 22.

[39]

*See* Haar, *supra* note 36, at 100 ("It goes without saying that individual retail investors will often, at this stage, still be confronted with difficult, especially factual, issues to be resolved in order to state their damage claims successfully. Problems such as establishing individual

*The Section 1782 Proceeding*

On December 23, 2015, Porsche filed *ex parte* applications in this Court and in the District of Connecticut for evidence in aid of the *Effecten* action pursuant to Section 1782. This Court granted the *ex parte* application on December 29, 2015, permitting Porsche to serve document and deposition subpoenas on eight Recipients, and Porsche served the subpoenas on December 30 and 31, 2015.[40]

Porsche seeks to aid its limitations defense in *Effecten* by requesting documents and deposition testimony here that may establish when plaintiffs knew of specific press releases or other public information that alerted, or could have alerted, them to their potential claims. Specifically, Porsche seeks to obtain documents from the Subpoena Recipients that fall into four categories and to take depositions of the Subpoena Recipients pursuant to Federal Rule of Civil Procedure 30(b)(6)

---

reliance on misstatements or causation of investment decisions by misstatements come to mind."); Halfmeier & Feess, *supra* note 24 at 10 ("As the causation between the wrong information and the investment decision concerns the motivation of individual plaintiffs, it can only be investigated on a case by case basis, but not in the model case. Consequently, individually litigated cases are necessary in the *third phase*.") (emphasis in original); Michael Sturner, *Model Case Proceedings in the Capital Markets - Tentative Steps Towards Group Litigation in Germany*, 26(Apr) CIV. JUST .Q. 250, 264 (2007) ("After the model case question has been decided by the Higher Court and possible appeals have been disposed of, the Lower Court(s) will then decide all the individual cases on the basis of the model case decision. The court(s) will have the opportunity to deal with the specific issues each case presents, namely the individual amount of damages, *questions of expiry of the limitation period*, proof of the causal link between the inaccuracy of the capital markets information and the acquisition of shares, and so on.") (emphasis added).

[40]

DIs 5-20.

In Connecticut, Judge Bryant granted Porsche's *ex parte* application on January 4, 2016 as to the three subpoena recipients in that proceeding. 15-mc-183 (VLB), DI 10 (D. Conn.). There, as here, the recipients have moved to quash the subpoenas, and Porsche has moved to compel. Those motions are pending.

on five topics.[41]  One of the deposition topics requests testimony concerning the corporate structures of the Subpoena Recipients.  The other four overlap substantially with the four categories of document requests and may be summarized as follows:

Documents and communications concerning:

(1) actual or potential transactions in or holdings of any VW securities by PSE between January 1, 2008 and December 31, 2011 ("Topic (1)");

(2) PSE's financial condition or its ability to transact in or hold VW securities between January 1, 2008 and December 31, 2011 ("Topic (2)");

(3) claims or causes of action that might be asserted against PSE in connection with VW securities ("Topic (3)"); and

(4) any legal proceeding or investigation related to PSE's disclosures or conduct with respect to VW securities ("Topic (4)").

Porsche has limited its deposition requests to one Rule 30(b)(6) deposition per Recipient "family," that is, Firefly, Marble Arch, and Tremblant.

Movants now move to quash the subpoenas, and Porsche moves to compel compliance on an expedited basis.

---

[41] *See* DI 3-3 and 3-4.

14

*Discussion*

*Section 1782*

In *Mees v. Buiter*,[42] the Second Circuit recently outlined the standard for analyzing

a Section 1782 application:

> A district court has authority to grant a § 1782 application where: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi–Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

> Once those statutory requirements are met, a district court may grant discovery under § 1782 in its discretion. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83–84 (2d Cir. 2004). "This discretion, however, is not boundless," but must be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Id.* at 84 (internal quotation marks omitted).

> In *Intel*, the Supreme Court identified four additional "factors that bear consideration in ruling on a § 1782(a) request." 542 U.S. at 264, 124 S.Ct. 2466. These are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Id.* at 264–65, 124 S.Ct. 2466.

Here, all agree that the three statutory factors are met.  The Movants, however, argue that the four

discretionary factors under *Intel Corporation v. Advanced Micro Devices, Inc.*[43] cut against granting

Porsche the evidence it seeks.

---

[42]

   793 F.3d 291, 297-98 (2d Cir. 2015).

[43]

   542 U.S. 241 (2004).

*The Discretionary* Intel *Factors*

> *Factor 1: Are Subpoena Recipients "Participants" in the German Proceeding?*

Movants contend that the Subpoena Recipients all are "participants" in the foreign proceeding and that this factor cuts in their favor.  Specifically, they argue that because one Subpoena Recipient is a plaintiff in *Effecten* and the others are general partners or investment managers of German Plaintiffs, all eight Subpoena Recipients are directly or indirectly within the jurisdictional reach of the German court, which could order production of the evidence sought if it saw fit.  Porsche counters that the German court has jurisdiction only over parties to the German action and that it cannot order production of evidence from non-party Recipients, even if they are related to German Plaintiffs.  Porsche argues further that the analysis would come to the same conclusion even if all Recipients were within the German court's jurisdictional reach because the first *Intel* factor is concerned primarily with whether the evidence sought is *available* in the foreign proceeding, which it is not.  In Germany, as in many civil law countries, Porsche argues, courts can order document production only when documents are described in great detail, and may question a witness only when a party makes a detailed and convincing showing of the need for the court to elicit testimony from a particular witness within its power.[44]  Here, Porsche argues, evidence it seeks is far broader than the German court could order, in practice if not necessarily in theory.

It is important to note that, in Germany, as in most civil law countries, the gathering of evidence is the province of the judge, not the lawyers as is the case in the United States.[45]  For

---

[44]

DI 41-1 ¶¶ 10, 18-19.

[45]

John H. Langbein, *The German Advantage in Civil Procedure*, 52 U. CHI. L. REV. 823, 826 (1985).

example, if the judge concludes that witness testimony is necessary, "[t]he judge serves as the examiner-in-chief. At the conclusion of his interrogation of each witness, counsel for either party may pose additional questions, but counsel are not prominent as examiners. Witness testimony is seldom recorded verbatim; rather, the judge pauses from time to time to dictate a summary of the testimony into the dossier.  The lawyers sometimes suggest improvements in the wording of these summaries, in order to preserve or to emphasize nuances important to one side or the other."[46]

Porsche's statement of the law concerning the first *Intel* factor – that the relevant inquiry is whether the foreign tribunal has the ability to control the evidence sought and order production, not whether the tribunal has control over the party targeted by the Section 1782 application – is supported by the weight of authority in this district.  For example, in *In re Application of Auto-Guadeloupe Investissement S.A.*,[47] the court held that *Intel* does not "preclude[] § 1782 discovery of parties participating in the underlying international proceeding."[48]  The court went on to explain that the first *Intel* factor weighed in favor of granting the Section 1782 application because "it [wa]s not clear the Pointe-a-Pitre Court could order [respondent] to produce the documents that [applicant] is seeking" based on the district court's "cursory examination of

---

[46]
      *Id.* at 828.

[47]
      No. 12-mc-221 (RPP), 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012).

[48]
      *Id.* at *5.

France's Code of Civil Procedure."[49]  This Court made a similar point in another Section 1782 proceeding only last month.[50]

Here, although there is some quibbling among the experts about the availability in the German court of the documents and testimony sought here, there is little question that it cannot and, in any case, would not order the type (and scope) of evidentiary production sought by Porsche in this Court.  Indeed, Movants' counsel conceded during oral argument that Porsche would have to "specify with considerable precision the particular documents [it] want[s]" in order to get document production in Germany.[51]

To be sure, Movants argue that Porsche may be able to obtain from the German Plaintiffs documents relating to its limitations defense at some point in the German action because

---

[49]

> *Id.*; *see In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) ("While HSBC may subject to the jurisdiction of a Venezuelan court hearing its suit against Pan Americano, a Venezuelan court apparently cannot order HSBC to produce the requested insurance documentation unless Pan Americano has detailed information about the nature and extent of the documentation. Pan Americano cannot obtain that necessary background information because HSBC has, to this point, refused to produce it. Because the Venezuelan court may not be able to itself order HSBC to produce the requested evidence, exercise of this Court's power under Section 1782 may be necessary to enable discovery of the documents.") (alterations, quotation marks, and citation omitted); *see also Marubeni Am. Corp. v. LBA Y.K.*, 335 F. App'x 95, 98 (2d Cir. 2009) (summary order) (holding that district court did not abuse discretion in granting § 1782 application against subpoena recipient who was party in foreign proceeding even when "the foreign court theoretically could order the parties to produce the requested evidence").

[50]

> *In re Application of Cools and Steffens*, 16-mc-0002 (LAK), Tr. at 47:8-16 [DI 29] (S.D.N.Y. Jan. 15, 2016) ("And in any case, the technical status of an individual from whom 1782 evidence is sought in the United States vis-a-vis status as a participant, whatever precisely that means, does not turn so much on the technical classification. It turns, rather, on whether the discovery sought in a 1782 proceeding is available in the foreign jurisdiction, and that for all practical purposes, for reasons I will come to, is simply not the case with respect to Mr. Dabah.").

[51]

> Tr., Feb. 4, 2016 at 22:22-23:5.

Germany requires some disclosure.[52]  Specifically, Movants' German law expert explains that once a defendant raises a limitations defense "the burden of making detailed statements then shifts to the plaintiff, and he must provide details regarding its internal organization and internal procedures that are relevant to the question of knowledge or constructive knowledge."[53]  A defendant then may take evidence regarding any "disputed details."[54]  But Movants offer no evidence concerning how long this process takes, or, more importantly, what the US Plaintiffs have disclosed, or likely would disclose, concerning Porsche's limitations defense in *Effecten*.  There is no indication that the disclosures would be sufficiently broad to give Porsche all that it seeks in this Section 1782 proceeding.  And Movants' counsel effectively conceded at oral argument that the German Plaintiffs would not be required to disclose in Germany all of the evidence that could bear on when and whether they were aware or could have been aware of the existence of their claims.[55]

Finally, Movants' contention that "Porsche has failed to demonstrate that it cannot establish its limitations defense without § 1782 assistance"[56] ignores completely the Second Circuit's

---

[52]      *See* DI 50 at 10-11.

[53]      Decl. of Dr. Axel Halfmeier [DI 48] ¶ 32.

[54]      *Id.*

[55]      *See* Tr., Feb. 4, 2016 at 24:2-23.

[56]      DI 50 at 8-11.

holding in *Mees* that Section 1782 does not contain a "necessity requirement."[57]   Indeed, "a

necessity requirement would be unwise, as well as in tension with the aims of section 1782."[58]

Accordingly, the first *Intel* factor cuts in favor of Porsche.

*Factor 2: Would the German Court Be Receptive to U.S. Federal Court Judicial Assistance?*

The law on this factor is clear: "District courts have been instructed to tread lightly

and heed only clear statements by foreign tribunals" that they would reject Section 1782 assistance.[59]

"Courts have found such proof in cases where the foreign tribunal or government has written to the

district court hearing the application and expressly stated that it did not want the American court's

help."[60]   The party opposing a Section 1782 application bears the burden of demonstrating that a

foreign court would not be receptive to assistance from a U.S. court.[61]

---

[57]   793 F.3d at 298-99 ("We have no reason to believe that Congress intended § 1782 to provide such parsimonious assistance, permitting discovery only when the applicant demonstrates she cannot do without it. Under § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success.").

[58]   *Id.* (quotation marks and alteration omitted).

[59]   *In re Application of OOO Promnefstroy*, Misc. No. M 19-99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-1100 (2d Cir. 1995)).

[60]   *Id.; e.g. Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004) (noting that the German Ministry of Justice and the local German prosecutor explicitly asked the district court judge to deny the discovery request); *In re Microsoft Corp.,* 428 F. Supp. 2d 188, 194 (S.D.N.Y. 2006) (noting explicit opposition to Microsoft's discovery request by the EU Commission).

[61]   *In re Application of Auto-Guadeloupe*, 2012 WL 4841945, at *6.

Here, Movants have submitted no evidence that a German court would object to evidence obtained through a Section 1782 proceeding.  Porsche, moreover, has provided evidence that German courts have been receptive to such evidence in the past.[62]  Accordingly, the second *Intel* factor also cuts in favor of Porsche.


*Factor 3: Is Porsche Seeking to Circumvent Foreign Proof-Gathering Restrictions?*

Movants complain that Porsche never attempted to obtain the evidence it seeks in the German court.  But that argument is unpersuasive.  The Supreme Court and the Second Circuit have made clear that the third *Intel* factor does not turn on whether the evidence sought in the U.S. proceeding would be available in the foreign proceeding.  Indeed, "§ 1782 contains no foreign-discoverability requirement."[63]  Nor does it contain a foreign-admissibility requirement.[64]  Further, the Second Circuit recently rejected reading any "exhaustion" or "quasi-exhaustion" requirement into Section 1782 that would require an applicant to previously have tried and failed to obtain the sought evidence in the foreign proceeding in order to obtain relief under Section 1782.[65]

---

[62]

DI 41-1 ¶¶ 20-21.

[63]

*Mees*, 793 F.3d at 303.

[64]

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("Accordingly, as a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application.") (emphases in original).

[65]

*Mees*, 793 F.3d at 303-04.

Movants make also some conclusory arguments that Porsche has refused to comply with certain unrelated document production orders in *Effecten* which, coupled with its failure to pursue production of this evidence in Germany, allegedly demonstrate its bad faith in utilizing the § 1782 procedure here.  These arguments are confusing and meritless.

Accordingly, the third *Intel* factor cuts in favor of Porsche.

*Factor 4: Are the Subpoenas Unduly Intrusive and Burdensome?*

"[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."[66]   The circuit court has instructed also that "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."[67]

Here, Porsche seeks documents and deposition testimony principally on four topics that, it contends, could yield evidence concerning when the US Plaintiffs knew or could have known that they had potential claims against Porsche relating to Porsche's investment in VW in 2008.[68] The Court must determine whether this evidence would be (1) relevant, and (2) unduly burdensome.

---

[66]      *Id.* at 302.

[67]      *Id.* (quotation marks omitted).

[68]      The four topics are defined above in the "Facts" section of this opinion.  Porsche seeks also deposition testimony concerning a fifth topic, namely, the corporate structure of the Subpoena Recipients and their affiliates.

*Relevance*

The evidence sought here is relevant because each topic "'bears on, or reasonably could lead to other matter that could bear on'" Porsche's limitations defense.[69]  The relevance of Topics (3) and (4) is plain and uncontested by Movants.  Topic (1) could lead to the discovery of information that US Plaintiffs knew about and were skeptical of Porsche's investments (or Porsche's statements about its investments) in VW, including the accuracy of Porsche's public statements in early 2008 that it did not intend to acquire 75 percent of VW shares.  Topic (2) could show that US Plaintiffs were informed about and skeptical of Porsche's ability to purchase VW shares, including Porsche's ability to purchase 75 percent of VW shares as Porsche indicated in October 2008 it would try to do.

*Burden*

The Movants have the burden to "justify curtailing" the relevant evidence sought by Porsche.[70]  They largely have failed to do so, although the Court modifies Topics (1) and (2) as described below.

*First*, Movants' argument that the evidence Porsche seeks is not proportional to the needs of the case because Porsche can seek this evidence through procedures in the German court is without merit for the reasons stated earlier in this opinion.

---

[69]

*Henry v. Morgan's Hotel Grp, Inc..*, No. 15-cv-1789 (ER), 2016 WL 303114, at *3 (S.D.N.Y. Jan. 25, 2016) (quoting *State Farm Mut Auto. Ins. Co. v. Fayda*, No. 14-cv-9792 (WHP), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015)).

[70]

*Allison v. Clos-ette Too, L.L.C.*, No. 14-cv-1618 (LAK), 2015 WL 136102, at *8 (S.D.N.Y. Jan. 9, 2015).

*Second*, Movants' contention that documents responsive to Topics (1) and (2) would be overbroad because Porsche seeks documents "whenever dated" is rejected. Porsche has agreed to limit the early date boundary to October 26, 2008 – the date of Porsche's alleged misstatement concerning its intent to acquire VW shares – and the outer date boundary to March 2, 2015 – the filing date of *Effecten*.[71]   That limitation is reasonable, and the Court modifies the subpoenas accordingly. The Court notes also that internal communications written after the date Porsche alleges the limitations period commenced (December 31, 2011) nonetheless could demonstrate what US Plaintiffs knew or could have known before that date.

*Third*, the Court rejects Movants' arguments that document requests and deposition testimony concerning Topics (3) and (4) implicate privileged material. Porsche has asserted that it seeks only non-privileged materials on these topics, as well as non-privileged information concerning otherwise privileged communications, such as the names of the persons sending and receiving communications, and the dates, locations, and general subject matter of communications.[72] Moreover, the Court is in no position to adjudicate this dispute unless and until such time as a privilege log has been produced and challenges to specific privilege designations have been raised. That task properly falls in the compliance rather than the motion to quash stage.

*Fourth*, Movants' argue that Rule 30(b)(6) depositions on Topic (2) would be overbroad because they would seek testimony concerning PSE's "financial condition." Porsche counters that it seeks only evidence relating to "Respondents' knowledge of, or communications

---

[71]   DI 53 at 5-6.

[72]   *Id.* at 6-7; *see Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 467 (2d Cir. 1989).

about PSE's financial condition *vis-a-vis its investments in VW securities*."[73]  The Court adopts that modification.

*Fifth*, Movants contend that Porsche's request for expedited document production and deposition testimony is "unfounded and [would be] unduly burdensome."  But they have made no real showing of undue burden apart, perhaps, with respect to the short timetable which is dealt with below.

Nonetheless, the Court encourages the parties to meet and confer in an effort to trim any remaining fat off these subpoena requests.  In particular, the parties are encouraged strongly to discuss narrowing custodians and search terms for retrieval of electronically stored information where possible.  Indeed, Porsche has indicated its willingness to meet and confer "as soon as possible."[74]  The parties may seek judicial assistance in the event they reach any impasse, and the Court will attempt to resolve any such disputes expeditiously, mindful of the timetable.  The parties are reminded, however, that the Court strongly discourages raising discovery disputes that reasonable attorneys would avoid or resolve amicably.

*Finally*, the Court modifies Topics (1) and (2) as follows:

Document Request (1)[75] is modified to read:

1(a): Documents sufficient to show any actual, intended, contemplated, or possible transaction in or holding of any VW Securities by PSE between January 1, 2008 and December 31, 2011.

---

[73]    DI 53 at 7-8 (quotation marks omitted) (emphasis added).

[74]    *Id.* at 5 n.5.

[75]    DI 3-3 at 3.

1(b): Documents and Communications commenting on or discussing any actual, intended, contemplated, or possible transaction in or holding of any VW Securities by PSE between January 1, 2008 and December 31, 2011.[76]

Document Request (2)[77] is similarly modified to read:

2(a): Documents sufficient to show the financial condition of PSE or the capability of PSE to transact in or hold VW Securities at any time between January 1, 2008 and December 31, 2011.

2(b): Documents and Communications commenting on or discussing the financial condition of PSE or the capability of PSE to transact in or hold VW Securities at any time between January 1, 2008 and December 31, 2011.[78]

Movants remaining arguments are rejected as meritless.

In the last analysis, both the uncontested statutory factors and the discretionary *Intel* factors weigh in favor of granting Porsche access to the evidence it seeks in this Section 1782 proceeding, as modified by this opinion.

*"Reciprocal Evidence"*

Movants argue that the Court should require Porsche, as a matter of reciprocity, to produce certain documents sought by the German Plaintiffs in *Effecten* in the event the Court enforces Porsche's subpoenas.

Here, Porsche seeks evidence concerning when US Plaintiffs became aware of certain information that alerted them, or could have alerted them to their claims in *Effecten*. By contrast,

---

[76]

Rule 30(b)(6) Subject of Examination (2) [DI 3-4 at 2] is modified in the same material respect.

[77]

DI 3-3 at 3.

[78]

Rule 30(b)(6) Subject of Examination (3) [DI 3-4 at 2] is modified in the same material respect.

the so-called reciprocal evidence Movants seek from Porsche does not, and, indeed, could not bear on when plaintiffs became aware of any information, nor could it unearth novel theories relevant to Porsche's limitations defense.  Movants' counsel conceded this point during oral argument.[79] Accordingly, there would be nothing reciprocal about granting Movants' access to the evidence they seek, and the request is denied.  This of course is without prejudice to the Movants' ability to seek evidence through a Section 1782 application to aid in the *Effecten* case in the future.

*Urgency*

Porsche argues that it needs this evidence quickly so that it has time to review any new information and incorporate it into its March 15, 2016 "final submission."  Porsche offers two explanations for how this evidence may benefit it in *Effecten*.  *First*, it may persuade the German court to dismiss *Effecten* as to the US Plaintiffs on limitations grounds as part of its April 13, 2016 (or perhaps slightly later) decision.  *Second*, it may persuade the German court to deny the "model case" application as to the US Plaintiffs, the German Plaintiffs, or to similarly-situated plaintiffs in other German actions.

The German court last discussed Porsche's limitations defense during the December 8, 2015 hearing, where it explained that Porsche could establish the defense only if it could demonstrate when specific information concerning PSE that could have alerted certain German Plaintiffs to their claims came to their attention.  The German court did not foreclose the limitations defense, but stated that the defense had not been established at that time.

---

[79]     Tr., Feb. 4, 2016 at 25:14-26:1.

The official minutes to the December 8 hearing announce that the German court set April 13, 2016 as the date "for the announcement of the decision on remaining matters."[80]   The parties agree that the German Plaintiffs' "model case" application – which was discussed but not decided on December 8 – is one matter likely to be resolved in the April 13, 2016 decision.  It is reasonable, therefore, to conclude that Porsche's limitations defense – which was discussed but not decided on December 8 – is another such "remaining matter[]" that may be decided on April 13, particularly if Porsche adduces new facts in its March 15, 2016 submission to the German court concerning when certain information came to the attention of particular plaintiffs.

During oral argument, the Court noted that if a model case is formed in Germany, *Effecten* would be stayed for its duration, after which Porsche would have a full opportunity to litigate its limitations defense.  It then inquired whether Porsche would suffer any harm or prejudice if its Section 1782 application were granted but production were not required on an expedited basis. Porsche explained, however, that if it does not get the expedited schedule it seeks, it may have a sizeable exposure on its balance sheet based on time-barred claims for years while the model case plays out, and that this exposure could affect the company's securities price and cost of capital, among other things, materially.  Moreover, it contended that evidence bearing on its limitations defense could influence the German court's decision whether to grant the model case application.

Porsche's first argument intuitively seems correct, although it would be a mistake to give it undue weight.  Large enterprises often have to live with large contingent exposures while claims wend their ways through the courts.

---

[80]

DI 41-2.

The second argument is more difficult to analyze.  The KapMuG statute directs a German court to deny a model case application when, as relevant here, (1) "[a] decision on the dispute upon which the application for the establishment of a model case is based is not dependent on the claimed establishment objective," or (2) "[t]he significance of the case for other legal disputes is not demonstrated."  There are at least two ways to read these provisions.  This analysis might be based *only* on alleged common issues, *i.e.*, whether common issues sufficiently similar among model case applicants and similarly situated parties, irrespective of any individual issues, justify litigating those common issues in a model case.  Alternatively, the statute might be read to call for an inquiry similar to a predominance inquiry under Federal Rule of Civil Procedure 23, *i.e.*, whether individual issues predominate over common issues to such an extent that a model case is not warranted.  Porsche advocates the second interpretation, arguing that it would benefit from submitting evidence demonstrating that individual issues, such as statute of limitations inquiries, would predominate over common issues.

Both readings seem plausible.  Based on the statutory language and the limited English language commentary, it perhaps is more likely than not that the German court would take the first view, in which case individual timeliness issues would be irrelevant.[81]  Nonetheless, the Court is mindful of the Second Circuit's warning against  "speculative forays into legal territories unfamiliar to federal judges" as "costly, time-consuming, and inherently unreliable method[s] of

---

[81] English language commentary that does exist suggests that several substantive individual issues typically remain to be adjudicated after the model case ruling, including issues of causation and reliance for every plaintiff, and, according to at least one commentator, statute of limitations.  *See supra* note 39.

29

deciding section 1782 requests[.]"[82]  Here, the question of whether evidence concerning a limitations defense could persuade a German court to deny a "model case" application does not appear to have been decided by the German courts.  Further, this Court is wary of applying a Rule 23-style predominance analysis to a German statute that adopted a model for aggregate litigation that is very materially different than American class action procedures.  The Court therefore concludes the best course of action is to give Porsche the evidence it seeks and allow the German court to decide for itself whether and to what extent it may influence the German Plaintiffs' model case application.

Accordingly, Porsche has demonstrated a need for an expedited production and deposition schedule, and its request is granted, as detailed below.  The Court understands this is a tight schedule.  Movants, however, should bear in mind that Porsche is seeking only three depositions and that Porsche's document requests have been somewhat narrowed.  Moreover, Movants have known since December 2015 that this outcome was possible.  To be sure, they have moved to quash, but it was relatively evident from precedent in this circuit generous to Section 1782 applicants that there was a reasonable chance they would have to produce documents and prepare witnesses on a short timetable.  In any event, as noted above, the parties are encouraged to meet and confer and the Court is ready to pitch in and get this process done in a practical way.

---

[82]

*Mees*, 793 F.3d at 298-99 (quotation marks and alterations omitted).

*Conclusion*

Porsche's motion to compel compliance [DI 40] is granted insofar as:

1.    Subpoena Recipients must comply with the document requests within one week of the date this opinion is filed, subject to the modifications noted in this opinion;

2.    The parties shall meet and confer as soon as possible to discuss efficient means of complying with the modified document requests, including agreeing on appropriate search terms and document custodians; and

3.    Subpoena Recipients shall provide Rule 30(b)(6) witnesses for the three Recipient families (Marble Arch, Firefly, and Tremblant) to provide testimony concerning the Subjects of Examination listed in the subpoenas, subject to the modifications noted in this opinion, on mutually convenient dates, or, if none exist, on March 1, 2, and 3, 2016, respectively.

Porsche's motion is denied in all other respects.

Movants' motion to vacate the Section 1782 order and quash the subpoenas [DI 36] is denied in all other respects.

SO ORDERED.

Dated:        February 18, 2015

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)